Richard Wayne TERRY, Petitioner–Appellant,

v.

John W. POTTER, Judge,
Respondent–Appellee.

No. 95–6697.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 5, 1996.

Decided April 15, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied May 23, 1997.

Richard Wayne Terry (briefed), Louisville, KY, pro se.

Paul Donald Gilbert (briefed), Office of the Attorney General, Frankfort, KY, for Respondent–Appellee.

Before: ENGEL, MERRITT, and MOORE, Circuit Judges.

ENGEL, Circuit Judge.

Petitioner Richard Terry appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. We reverse.

## I.

Terry was convicted in a Kentucky circuit court of the wanton murder of his brother-in-law, Abraham King. The incident occurred soon after the death of Terry's sister, for which Terry apparently blamed King. Terry and King were both in Terry's mother's house, and Terry shot King at close range in the back of the head. According to Terry, the shooting was in self-defense because King had pulled out the gun.

The indictment charged that Terry had "committed the offense of Murder by intentionally or wantonly causing the death of Abraham King." In Kentucky, intentional murder and wanton murder are forms of the capital offense of murder:

A person is guilty of murder when:

(a) With *intent* to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution a person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. However, nothing contained in this section shall constitute a defense to a prosecution for or preclude a conviction of manslaughter in the first degree or any other crime; or

(b) Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he *wantonly* engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.

Ky.Rev.Stat. § 507.020(1) (emphasis added). At trial, the jury was instructed as follows:

[Y]ou may find the defendant, Richard Wayne Terry, not guilty or you may find him guilty of one of the following offenses:

(1) Intentional Murder ...;

OR

(2) Wanton Murder ...;

OR

(3) First–Degree Manslaughter ...;

OR

....

The jury was presented with one verdict form for each offense. Each form contained two possible places for the foreperson to sign: one for "not guilty," and one for "guilty." The jury found Terry guilty of wanton murder and left blank the forms for intentional murder and the other charges. Neither Terry nor the prosecutor objected in any way to the jury's leaving all but one of the pages blank. The court entered judgment "that the defendant is guilty of the crime of MURDER (WANTON)" and sentenced Terry to forty-five years' imprisonment.

The Supreme Court of Kentucky reversed the conviction, holding that the trial court had erred in denying Terry's motion for a directed verdict on the charge of wanton murder because there was no doubt from the evidence that the shooting was intentional. The court explained that wanton murder is not a lesser-included offense of intentional murder. Rather, wanton murder and intentional murder are the two possible ways to commit "murder." Each is as culpable as the other. What distinguishes the mental state of wanton murder from that of intentional murder is that "the actor is indifferent to who is/are the victim(s)." The court noted that if the jury believed Terry's self-defense story, it could find him guilty of second-degree manslaughter or reckless homicide. If the jury did not believe the self-defense

story, the court continued, it could find Terry guilty of intentional murder or first-degree manslaughter. The court concluded that "[w]anton murder is not an available option under the evidence presented." *McGinnis v. Commonwealth,* 875 S.W.2d 518, 520–21, 528–29 (Ky.1994).

On remand, facing a new trial for intentional murder, Terry filed a motion to dismiss on grounds of double jeopardy. The trial court denied that motion, and the Kentucky Court of Appeals rejected Terry's petition for a writ of mandamus or prohibition to bar retrial. The Supreme Court of Kentucky affirmed, opining that although Terry could not be retried for wanton murder, the Double Jeopardy Clause did not bar retrial for intentional murder because "intentional murder and wanton murder are not the same offense." *Terry v. Potter,* No. 94–CA–2671–OA, at 3 (Ky. July 6, 1995). Terry then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the Western District of Kentucky. The district court denied the petition, and this appeal followed.

In denying the petition the district court ruled:

In the case at bar, the inconclusive termination of the first trial was apparently due to an oversight on the part of the prosecutor, the defendant, and the trial judge. This is true even though the trial judge correctly instructed the jury on the theory of intentional murder. We can discern no motive on the part of the prosecutor in overlooking the intentional murder theory since the evidence was very strong in support of that theory. We therefore decline to bar reprosecution on the theory of intentional murder. Our opinion in this regard is bolstered by the fact that under Kentucky law, as reflected in the statute KRS 507.020, wanton murder and intentional murder are two different offenses. *See Smith v. Commonwealth,*[1] 737 S.W.2d 683 (1987).

\*   \*   \*

As pointed out in *McGinnis, supra,* when a person wantonly engages in conduct under circumstances manifesting extreme indifference to human life and which causes a grave risk of death to another person . . ., that constitutes the crime of wanton murder.

Since the Court is of the opinion that two separate offenses were charged in the indictment, and only one was disposed of conclusively, and since no bad motive on the part of the prosecutor is shown, petitioner is not entitled to rely upon the double jeopardy clause.

## II.

■■■ We review de novo the legal conclusions of the district court. *Lundy v. Campbell,* 888 F.2d 467, 469–70 (6th Cir.1989). The Kentucky Supreme Court's interpretation of Kentucky law is binding on federal courts. *Gilbert v. Parke,* 763 F.2d 821, 826 (6th Cir.1985).

■■■ The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." At a jury trial, jeopardy attaches when the jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2160–61, 57 L.Ed.2d 24 (1978). In general, jeopardy ends with an acquittal or a conviction; if the conviction is reversed on appeal, however, a defendant may be retried for the same offense. *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195–96, 41 L.Ed. 300 (1896). The Supreme Court has explained *Ball* as holding that jeopardy continues until a conviction becomes final on appeal. *See Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 1759–60, 26 L.Ed.2d 300 (1970). An exception to this rule is that retrial is barred when a conviction is reversed because of insufficient evidence. *Burks v. United States,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978). The peculiar circumstance of Terry's case is

---

1. The language in *McGinnis* relied upon by the district judge is:

"Under KRS 507.020(1), 'murder' is but one offense which may be committed in one of two different ways: either by intentionally causing the death of another person, or by wantonly engaging in conduct which 'causes the death of another person' 'under circumstances manifesting extreme indifference to human life.' "

that the jury did not explicitly acquit or convict him of intentional murder.

The issue to be decided here is whether Terry's jeopardy of conviction for intentional murder continued after his trial or expired when the jury was discharged.

In *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), the Supreme Court addressed a case with a similar background. A District of Columbia jury had been instructed that it could find the defendant guilty of either first– or second-degree murder. It found him guilty of second-degree murder, and its verdict was "silent" on the first-degree charge. On appeal, the conviction for second-degree murder was reversed. On remand, the defendant was tried again and was found guilty of first-degree murder. The Supreme Court held that the second trial violated the Double Jeopardy Clause. The Court noted that for jeopardy to attach, "it is not ... essential that a verdict of guilt or innocence be returned...." *Id.* at 188, 78 S.Ct. at 224. Because "the original jury had refused to find [the defendant] guilty on [the first-degree murder] charge," the Court found that jeopardy on that charge had ended with the discharge of the jury. Furthermore, the Court held that the silent verdict amounted to an "implicit acquittal." The jury had had "a full opportunity" to find the defendant guilty of first-degree murder, the Court noted, so its failure to convict the defendant must be treated "no differently" from a verdict of not guilty. *Id.* at 190–91, 78 S.Ct. at 225–26.

The Commonwealth argues that *Green* is inapplicable because wanton murder is not a lesser-included offense of intentional murder in Kentucky. The *Green* Court explained, however, that the relationship of the two offenses is not determinative:

> Green's plea of former jeopardy does not rest on his conviction for second degree murder but instead on the first jury's refusal to find him guilty of felony murder. It is immaterial whether second degree murder is a lesser offense included in a charge of felony murder or not. The vital

thing is that it is a distinct and different offense.

*Id.* at 194 n. 14, 78 S.Ct. at 227 n. 14.

The next Supreme Court case to address a similar situation was *Cichos v. Indiana,* 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). The defendant had been charged in state court with reckless homicide and involuntary manslaughter and had been found guilty only of reckless homicide, the less serious offense. The verdict was silent as to the manslaughter count. After the conviction was reversed on appeal, the defendant was retried on the same two counts, with the same result. The Supreme Court granted a petition for certiorari to decide whether the Double Jeopardy Clause applied to state prosecutions through the Due Process Clause of the Fourteenth Amendment.[2] The Court dismissed the writ of certiorari as improvidently granted because of its finding that even if the Double Jeopardy Clause applied, the defendant could not benefit from it. With little discussion and only a fleeting reference to *Green,* the Court noted that it could not accept the argument that the first jury had acquitted the defendant of the manslaughter charge. *Id.* at 80, 87 S.Ct. at 273.

We see some tension between *Green* and *Cichos,* and we find *Green* more relevant to this case. *Cichos* technically decided only that the petition for certiorari had been improvidently granted. Indeed, it has been cited infrequently by the Supreme Court, far less often than *Green.* Moreover, to the extent that *Cichos* discussed the "silent verdict" issue at all, it placed great weight on the relevant statutory scheme, which provided that a conviction of either reckless homicide or involuntary manslaughter "shall be a bar to a prosecution for the other." 385 U.S. at 78, 87 S.Ct. at 272 (quoting Ind.Stat.Ann. § 47–2002 (1965)). The Kentucky murder statute has no such provision.

Three years later, the Court addressed a similar issue in *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). The defendant had been tried for murder and found guilty of the lesser-included

---

**2.** The Supreme Court later held that the Double Jeopardy Clause does apply to state prosecutions.

*Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

charge of voluntary manslaughter; the jury verdict had made no reference to the murder charge. After the conviction was reversed on appeal, the defendant was retried under the same indictment with the same verdict. Without any mention of *Cichos*, the Court held that under *Green*, the retrial placed the defendant in double jeopardy. The Court stressed that the Double Jeopardy Clause protects defendants from the "risk of conviction"; because the defendant had once faced the risk of conviction for murder, he could not again be subjected to that risk, notwithstanding the lack of an explicit verdict on that charge. *Id.* at 326–29, 90 S.Ct. at 1759–61.

■ We hold that under *Green* and *Price*, Terry may not be retried for intentional murder. As we noted in *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988), "[w]hat happened here most accurately is described as a termination of the jeopardy ..., without a conviction or an acquittal, but a termination nonetheless." *Id.* at 1404. The jury had ample opportunity to convict Terry on the intentional murder charge at the first trial, and it did not. *McGinnis*, 875 S.W.2d at 520. Retrying Terry would violate his "valued right to have his trial completed by a particular tribunal." *Crist*, 437 U.S. at 36, 98 S.Ct. at 2161 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). In sum, although jeopardy on the wanton murder charge may have continued after the trial and successful appeal, we hold that jeopardy on the intentional murder charge ended with the trial.

Furthermore, the verdict on the intentional murder charge can be interpreted as an implied acquittal.[3] Like the *Green* jury, the jury at Terry's trial was instructed in the disjunctive—that it could find Terry guilty of intentional murder *or* wanton murder. Once

the jury found Terry guilty of wanton murder, therefore, there was no need for the foreperson to sign the "not guilty" line on the intentional murder verdict form.[4] This was not a case in which the inconclusiveness of the verdict was any party's "fault." *See United States v. Scott*, 437 U.S. 82, 95–96, 98 S.Ct. 2187, 2196–97, 57 L.Ed.2d 65 (1978) (fault of defendant); *Saylor*, 845 F.2d at 1408 (fault of prosecutor).

We realize that a Second Circuit decision reached the opposite conclusion in a similar case. In *United States ex rel. Jackson v. Follette*, 462 F.2d 1041 (2d Cir.1972), the defendant had been tried in the New York state courts for two types of first-degree murder: premeditated murder and felony murder. The jury was instructed that if it returned a verdict on one count, it should remain silent as to the other. The defendant was convicted of premeditated murder; after this conviction was overturned in a habeas corpus action, he was retried on both counts and found guilty of felony murder. The Second Circuit held that the retrial was permissible because the first jury had not implicitly acquitted the defendant of felony murder. The court read *Green* as being limited to situations in which a defendant is convicted of a lesser-included offense at the first trial. *Id.* at 1050. We do not read *Green* so narrowly; indeed, *Green* noted that it is "immaterial" whether the charge that originally resulted in a guilty verdict is a lesser-included offense of the charge that is retried. 355 U.S. at 194 n. 14, 78 S.Ct. at 227 n. 14.

*Jackson* queried whether the "continuing jeopardy" language in *Ball* and other existing case law attached to first-degree murder as a whole or merely to the particular form of first-degree murder on which the first conviction was based. 462 F.2d at 1045–46.

---

3. Although we disfavor the citation of unpublished decisions, 6th Cir.R. 24(c), we cannot help but mention that we have ruled that double jeopardy barred retrial in almost identical circumstances. *Terry v. Peers*, Nos. 85–5076, 85–5077, 1986 WL 16495 (6th Cir. Feb.21, 1986). In *Terry* [sic Allen Anthony Terry], the jury at the defendant's trial in Kentucky had received the same instructions as in this case. *Id.* at *1 n. 2. The jury found that defendant guilty of wanton murder and left the other verdict forms blank, and

the conviction was reversed on appeal. We held that retrial for intentional murder was barred because of an "implicit acquittal." *Id.* at *1.

4. We do not comment on the effect of the silent verdict as to charges that might be considered lesser-included offenses of wanton murder under Kentucky law. *See Morris v. Mathews*, 475 U.S. 237, 245, 106 S.Ct. 1032, 1037, 89 L.Ed.2d 187 (1986).

That question was not answered in *Green*, in which the relevant offenses were first-and second-degree murder. The statute relevant to the instant case is more analogous to that in *Jackson* than to that in *Green*, because intentional murder and wanton murder are forms, rather than degrees, of the unitary offense of murder under Kentucky law. If we viewed the continuing jeopardy on the particular offense of wanton murder as constituting jeopardy on the general offense of murder and therefore as encompassing jeopardy on the particular offense of intentional murder, we could not rule in Terry's favor. The *Jackson* court implicitly adopted such a view, but we cannot accept that reasoning.

Judge Oakes in *Jackson* candidly acknowledged that "[w]e have, in short, a case that is sui generis, not controlled by any Supreme Court case on its facts, and not capable of simple resolution either on an historical or logical basis." *Id.* at 1049. He then concluded that "[w]e come to the point where we must weigh on a fine scale the competing interests of the public and the petitioner." *Id.* We of course have the benefit of continuing case law generated since *Jackson* was decided in 1972, including authority within our own circuit. And, if *Jackson* is in fact sui generis, we deal here with a different state's own statutory scheme. Even that, however, does not fully demarcate our different viewpoint.

While we respect the careful logic which led Judge Oakes to his decision we cannot follow it. If indeed it is proper to follow a prudential rationale when interpreting federal constitutional law we believe that the constitutional language embodies more durable stuff and is entitled to greater deference. "Twice put in jeopardy" means just that. If Terry is now to stand trial on the intentional murder charge it will be fully twice that he has, and none of the justifications used in existing Supreme Court and Sixth Circuit authority in our judgment exist within the factual confines of this case. Further, even assuming it is within our power to bend the force of the principle on other considerations which led the Second Circuit to weigh and balance the interests of the petitioner and the public, or as here to refuse to enforce the constitutional protection simply because only when no "bad motive" of the prosecutor is shown, we do not view application of such standards as that benign. Neither the defendant here nor his counsel can be charged with having brought on the dilemma faced by the Kentucky court. It is not for us to extricate that court from the untoward results of a decision construing Kentucky statutory law, nor to question the wisdom of its own logic in doing so. That is Kentucky's business; ours is application of the Fifth Amendment as made applicable to state criminal prosecutions under the Fourteenth. We respectfully decline to view the Kentucky court problem as merely an "oversight" for indeed it appears to have been a common practice rather than an isolated one. Terry has already stood trial once and was already in very real jeopardy of a jury conviction for intentional murder, a conviction which we now know would have been upheld on appeal. Terry has already gone through not only the risk but the trauma of that trial, and his counsel has already done his job at the first trial, whoever paid him. It may be true that the prosecutor was free of guile or design if he is otherwise to be charged fault for letting the "oversight" to occur, but what about the next time someone in Kentucky is tried under similar circumstances? How can anyone tell whether the motive was innocent or covertly designed to procure a second bite of the apple should the first one come a cropper or produce a result not to the prosecution's liking? Does the double jeopardy clause allow such a result? Aren't these exactly the dangers the double jeopardy clause was designed to prevent?

■ The Kentucky statute separately describes intentional murder and wanton murder, and we find that continuing jeopardy as to one may not be bootstrapped onto the other. We recognize that if a charge of murder is brought under two legal theories, such as direct and accomplice liability, or two factual theories, such as shooting and stabbing, the reversal of a conviction based on only one of the theories may not bar retrial under the other theory. *See United States v. Garcia*, 938 F.2d 12, 15 (2d Cir.1991). When a charge of murder is brought under two separate statutory subsections of a unitary

460

offense, however, as in this case, jeopardy attaches separately as to each. *See United States v. Cavanaugh,* 948 F.2d 405 (8th Cir. 1991). The jury was discharged without convicting Terry of intentional murder, and now the Commonwealth may not again subject him to the same risk of conviction under Ky.Rev.Stat. 507.020(1). *See Price,* 398 U.S. at 326, 90 S.Ct. at 1759–60.

### III.

For the foregoing reasons, we REVERSE the judgment of the district court and remand with instructions to grant the writ of habeas corpus.