123 P.3d 484 (2005)
130 Wash.App. 308
STATE of Washington, Respondent,
v.
Gary Michael BENN, Appellant.
No. 31122-4-II.
Court of Appeals of Washington, Division 2.
November 15, 2005.
David Zuckerman, Attorney at Law, Seattle, WA, for Appellant.
P. Grace Kingman, Attorney at Law, Tacoma, WA, Miry Kim, Attorney at Law, Seattle, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Gary Michael Benn appeals his two convictions of aggravated murder. He claims that the trial court erred when it allowed the State to proceed on a "single act" aggravating circumstances theory because a jury implicitly acquitted him of that circumstance in his first trial. He also claims that the court erred in: (1) admitting prior testimony when he did not have the opportunity or similar motive to cross-examine the witness; (2) limiting his cross-examination of the State's expert witnesses concerning learned treatises; (3) excluding a letter he wanted to use to impeach a state witness; (4) excluding prior inconsistent testimony; and (5) admitting a hearsay statement one of the victims made to Benn's brother. Finally, Benn argues that his second trial violated double jeopardy principles because his first trial was reversed for prosecutorial misconduct. We vacate the aggravating circumstances special verdict because the first jury's decision should have prevented the State from relitigating the "single act" issue at the second trial. Otherwise, we affirm the convictions.

*485 FACTS

I. The First Trial
¶ 2 In 1988, Gary Michael Benn called the Pierce County Sheriff's Department from the home of his half-brother, Jack Dethlefsen, to report finding Dethlefsen and his friend Michael Nelson dead. See Benn v. Lambert, 283 F.3d 1040, 1044 (9th Cir.2002). Both men had been shot once in the chest and once in the back of the head. Benn, 283 F.3d at 1044.
¶ 3 The police found a handgun on the floor between the two bodies and a baseball bat next to Dethlefsen's body. Benn, 283 F.3d at 1044. Dethlefsen's head rested next to a gun cabinet, which had a shotgun in it, and the glass face of the cabinet, which had been broken. Benn, 283 F.3d at 1044. One of Benn's boots was spattered with blood. Benn, 283 F.3d at 1044.
¶ 4 The State charged Benn with two counts of premeditated, first degree murder with the aggravating circumstance that the murders were part of a "common scheme" or "single act." Benn, 283 F.3d at 1044. At trial, the defense conceded that Benn had shot both Dethlefsen and Nelson, but it claimed that he did so in self-defense after a spontaneous argument between Benn and Dethlefsen. Benn, 283 F.3d at 1044.
¶ 5 The State's theory was that Benn planned the killings to cover up his participation with the victims in an arson insurance fraud scheme. Benn, 283 F.3d at 1044. To prove the theory, the prosecution relied on statements that Benn had allegedly made to Roy Patrick, a jailhouse informant who was Benn's cellmate before trial. Benn, 283 F.3d at 1044-45.
¶ 6 Even though the prosecuting attorneys had first interviewed Patrick more than a year before trial, they did not identify him as a witness until the day before trial. Benn, 283 F.3d at 1048. Moreover, Pierce County Assistant Prosecuting Attorney Michael Johnson lied to the defense, stating that Patrick's identity could not be disclosed because he was in a witness protection program. Benn, 283 F.3d at 1048. Later, it came out that Patrick was never in such a program. Benn, 283 F.3d at 1048. In addition, the prosecution failed to disclose impeaching evidence relating to Patrick as well as critical exculpatory evidence showing that the fire in Benn's trailer, the alleged arson, was an accident. Benn, 283 F.3d at 1050.[1]
¶ 7 A jury convicted Benn of both counts of first degree murder. See State v. Benn, 120 Wash.2d 631, 638, 845 P.2d 289 (1993). The jury was instructed:
The laws of the State of Washington provide for certain Aggravating Circumstances which may be present during the commission of premeditated first degree murder. Included in these aggravating circumstances are:
(1) There was more than one victim and the murders were part of a common scheme or plan or the result of a single act of the defendant.
The presence of any aggravating circumstance must be proved by the state beyond a reasonable doubt. Where there is more than one aggravating circumstance alleged, the jury must be unanimous as to which circumstance was present. There may be more than one circumstance present.
Clerk's Papers (CP) at 434 (emphasis added).
¶ 8 The corresponding special verdict form read as follows:
As to Count I and II was there more than one victim and were the murders: part of a common scheme or plan yes (Yes or No), or the result of a single act of the defendant ______ (Yes or No)?
CP at 510. The jury wrote "Yes" that Benn killed multiple victims as part of a common scheme or plan, but it left the second aggravating factor blank. See Benn, 120 Wash.2d at 647, 845 P.2d 289. The court sentenced Benn to death. Cf. Benn, 120 Wash.2d at 647, 845 P.2d 289.
*486 ¶ 9 Benn appealed to the Supreme Court, which affirmed his murder convictions and death sentence. Benn, 120 Wash.2d 631, 845 P.2d 289. The Supreme Court denied his personal restraint petition.[2] Then the United States District Court for the Western District of Washington granted Benn's habeas petition and ordered a new trial. Benn v. Wood, No. C98-5131FDB, 2000 U.S. Dist. LEXIS 12741, 2000 WL 1031361 (June 30, 2000). The State appealed, and the Ninth Circuit affirmed holding that: (1) the prosecution violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it withheld evidence that would have seriously undermined Patrick's credibility and when it withheld experts' findings that the fire was accidental. Benn, 283 F.3d at 1053-54.

II. The Second Trial
¶ 10 On retrial, the State charged Ben with two counts of aggravated first degree murder. This time, the State did not seek the death penalty and abandoned the arson insurance fraud theory. It also conceded that it could not prove that the murders were part of a common scheme or plan, and it relied solely on the "single act" theory. CP at 440. Before trial, Benn moved to dismiss on grounds of double jeopardy, arguing that the prosecutor's misconduct in the first trial precluded retrial.[3]
¶ 11 Benn also moved to compel the State to disclose a complaint letter that the Ethics Committee of the American Academy of Forensic Sciences (AAFS) had sent to Rod Englert, one of the State's expert witnesses. Benn argued that the letter was material because it impeached Englert, relevant to his credibility and bias. The State argued that the letter was not discoverable and that the allegations in the letter were baseless and forwarded by Englert's rivals and competitors. The court denied Benn's motion.
¶ 12 The State also moved to preclude Benn from cross-examining Englert about accusations in the letter. The court ruled that it would not allow cross-examination on the underlying data in the letter. Later, the court clarified that Benn could cross-examine Englert on which college and graduate courses he had taken, his opinions about blood stain patterns, and articles he had written about crime scene investigations.
¶ 13 Walter Pete Hartman testified in the first trial that Benn attempted to hire him to kill Jack Dethlefsen. Hartman died before the second trial, so the State moved to admit his former testimony. The court granted the motion, ruling that Hartman was "unavailable" as defined in Evidence Rule 804(a)(4). CP at 284-85. The court also found that Hartman's prior testimony was "former testimony" under ER 804(1) and that Benn had had the opportunity and similar motive to cross-examine Hartman at the first trial even though he declined to do so. CP at 284-85. But it ruled that Benn could impeach Hartman under ER 806. CP 284-85. Accordingly, Benn called Charles Bonet, a former investigator, who offered testimony intended to impeach Hartman.
¶ 14 The State also objected to Benn's attempts to impeach one of the State's expert witness, Michael Grubb, on cross-examination, regarding certain learned treatises. The State argued that Benn was trying to elicit the "substance" of the treatises. Report of Proceedings (RP) at 1848. The court sustained the State's objection.
¶ 15 When the State rested, Benn moved to dismiss the aggravating factor, arguing that double jeopardy barred the State from proceeding on the "single act" aggravating factor because the jury left the corresponding *487 verdict form blank in the first trial. In his motion, he emphasized:
the Court discharged the jury without any inquiry into why it had not returned a verdict on the single act aggravating factor. There was no showing that the jury was hopelessly deadlocked. The Court never asked the jury whether it might be able to reach a verdict on that issue after further deliberations. The Court never declared a mistrial, and it certainly never obtained the defendant's consent to do so.
CP at 414 (footnote omitted).
¶ 16 The court ruled:
Because that portion of the special verdict form was left blank, the jury did not unanimously find it was not an aggravating circumstance, and therefore, jeopardy did not attach to that alternative aggravating circumstance.
CP at 440-41.
¶ 17 Benn also objected to certain hearsay testimony by his brother, Monte Benn. Specifically, Benn objected to Monte's statement, "Jack told me he was beat up in his kitchen, and that if I saw Gary, he wanted to talk to him about it." RP at 2490. The trial court overruled Benn's objection.
¶ 18 The jury found Benn guilty of both counts of first degree murder. The jury also answered "yes" to the aggravating factor special verdict that the murders constituted a "single act." CP at 488.

ANALYSIS

I. Double Jeopardy for the "Single Act" Aggravating Factor
¶ 19 Benn argues that the trial court should have granted his motion to dismiss the single act aggravating factor based on double jeopardy. Whether the first jury's failure to fill in the special verdict on single act aggravating factor bars the second jury from considering the issue is a question of law that we review de novo. See generally, State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996) (stating that we review issues of law de novo).
¶ 20 The United States and Washington Constitutions' double jeopardy clauses are "identical in thought, substance, and purpose." State v. Schoel, 54 Wash.2d 388, 391, 341 P.2d 481 (1959); see WASH. CONST. art. I, § 9; U.S. CONST. amend. V. They both "protect against multiple punishments for the same offense, as well as against a subsequent prosecution for the same offense after acquittal or conviction." State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005) (citing In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004)). Where the language of the state constitution is similar to that of the federal constitution, the language of the state constitutional provision should receive the same definition and interpretation that the United States Supreme Court has given to the like provision in the federal constitution. State v. Linton, 122 Wash.App. 73, 76, 93 P.3d 183 (2004) (citing Schoel, 54 Wash.2d at 391, 341 P.2d 481), review granted, 153 Wash.2d 1017 (2005). Washington courts have given article I, section 9 the same interpretation that the Supreme Court has given to the fifth amendment. State v. Gocken, 127 Wash.2d 95, 103, 896 P.2d 1267 (1995) (citing State v. Ridgley, 70 Wash.2d 555, 556, 424 P.2d 632 (1967); State v. Larkin, 70 Wash.App. 349, 352-53, 853 P.2d 451 (1993); State v. Kirk, 64 Wash. App. 788, 790-91, 828 P.2d 1128 (1992)); State v. Cochran, 51 Wash.App. 116, 121-22, 751 P.2d 1194 (1988).

A. Dismissal Without Consent

¶ 21 Benn reasons that collateral estoppel bars the State from relitigating the single act aggravating circumstance because the court discharged the first jury without inquiring into why it had not returned a verdict on the single act aggravating factor; there was no showing that the jury was hopelessly deadlocked; the court never asked the jury whether it might be able to reach a verdict on that issue after further deliberations; and the court never declared a mistrial or obtained Benn's consent to do so. Under these circumstances, according to Benn, the first jury's failure to decide the issue operated as an acquittal.
¶ 22 The failure of a jury to answer a verdict form may bar the State from retrying *488 the defendant on the charge. Green v. United States, 355 U.S. 184, 188-89, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In Green, the prosecution tried the defendant on alternative charges of first degree and second degree murder as well as one count of arson. Green, 355 U.S. at 186, 78 S.Ct. 221. The jury found him guilty of arson and second degree murder but was silent on the first degree murder charge. Green, 355 U.S. at 186, 78 S.Ct. 221. The Court of Appeals reversed his second degree murder conviction and remanded for a new trial. Green, 355 U.S. at 186, 78 S.Ct. 221. The State again charged Green with first degree murder. Green, 355 U.S. at 186, 78 S.Ct. 221. The United States Supreme Court held that the second trial on the first degree murder charge violated the double jeopardy clause, reasoning that when a jury has had a full opportunity to return a verdict, no extraordinary circumstances have prevented a verdict, and the court dismisses the jury without the defendant's consent, the result is the same as a jury finding of not guilty. Green, 355 U.S. at 188, 191, 78 S.Ct. 221.
¶ 23 Washington courts have applied the same reasoning. In State v. Daniels, 124 Wash.App. 830, 833, 835, 103 P.3d 249 (2004), the State charged the defendant with homicide by abuse and, in the alternative, second degree murder  domestic violence, predicated on either second degree assault or first degree criminal mistreatment. The jury left the verdict form for homicide by abuse blank. Daniels, 124 Wash.App. at 836-37, 103 P.3d 249. On retrial, Daniels argued that by leaving the verdict form blank, the jury implicitly acquitted her on the homicide by abuse charge and double jeopardy barred retrial on that charge. Daniels, 124 Wash.App. at 842, 103 P.3d 249.
¶ 24 Relying on State v. Davis, 190 Wash. 164, 67 P.2d 894 (1937),[4]State v. Corrado, 81 Wash.App. 640, 645, 915 P.2d 1121 (1996), and State v. Hescock, 98 Wash.App. 600, 602, 989 P.2d 1251 (1999), we held in Daniels that because the jury had ample opportunity to convict the defendant on homicide by abuse but left the corresponding verdict form blank, and because the record did not show why the court dismissed the jurors without reaching a decision on that charge, the jury's silence operated as an implied acquittal. Daniels, 124 Wash.App. at 842-44, 103 P.3d 249; cf. Kirk, 64 Wash.App. at 793-94, 828 P.2d 1128.
¶ 25 The State relies on Sattazahn v. Pennsylvania, 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), claiming that the Sattazahn Court held that a non-result on an aggravating factor cannot be an acquittal. But Sattazahn, a four justice plurality opinion, does not stand for that simple proposition in all cases. In fact, the Sattazahn plurality followed the well-established rule that "a retrial following a `hung jury' does not violate the Double Jeopardy Clause." Sattazahn, 537 U.S. at 109, 123 S.Ct. 732 (quoting Richardson v. United States, 468 U.S. 317, 324, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984)). In that case, the jury convicted the defendant of first degree murder, third degree murder, and various other charges. Sattazahn, 537 U.S. at 103, 123 S.Ct. 732. But the jury was "hopelessly deadlocked" on the aggravating factor. Sattazahn, 537 U.S. at 104, 123 S.Ct. 732. The jury communicated their inability to agree to the judge, who dismissed the jury as "hung" and entered a life sentence. Sattazahn, 537 U.S. at 104, 123 S.Ct. 732.
¶ 26 Sattazahn appealed and obtained a reversal. See Sattazahn, 537 U.S. at 105, 123 S.Ct. 732. On retrial, the State alleged the same and an additional aggravating circumstance. See Sattazahn, 537 U.S. at 105, *489 123 S.Ct. 732. Arguing double jeopardy, the defendant moved to preclude the State from seeking the death penalty. The Court observed that:
the [first] jury deadlocked ... on whether to impose the death penalty; it made no findings with respect to the alleged aggravating circumstance. That result  or more appropriately, that non-result  cannot fairly be called an acquittal `based on findings sufficient to establish legal entitlement to the life sentence."
Sattazahn, 537 U.S. at 109, 123 S.Ct. 732 (quoting Arizona v. Rumsey, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984)). The Court concluded that under these circumstances, double jeopardy does not prevent the State from seeking the death penalty on retrial. Sattazahn, 537 U.S. at 110, 123 S.Ct. 732. Sattazahn does not help the State here because the trial court did not find that the jury was "hopelessly deadlocked" on the single act aggravating circumstance.
¶ 27 This case is more like Terry v. Potter, 111 F.3d 454 (6th Cir.1997). In Terry, the State charged the defendant with "Murder by intentionally or wantonly causing the death" of the victim, among other charges. Terry, 111 F.3d at 455. The jury found the defendant guilty of wanton murder and left blank the forms for intentional murder and other charges. Terry, 111 F.3d at 455. Neither the defendant nor the prosecutor objected when the court dismissed the jury without having answered the other verdict forms. Terry, 111 F.3d at 455. The Sixth Circuit reversed the wanton murder conviction for insufficient evidence and held that the State's retrial of the defendant on intentional murder violated double jeopardy principles because the first jury had the opportunity to convict of intentional murder in the first trial and did not. Terry, 111 F.3d at 458.
¶ 28 Here, like the offenses in Terry, "single act" and "common scheme or plan" are equally culpable, separate aggravating circumstances. The jury had a full opportunity to find that the murders were part of a "single act" at the first trial, and it did not. Thus, jeopardy on the "single act" aggravating circumstance ended with the first trial. The trial court should have dismissed the single act aggravating factor allegation. Accordingly, we must vacate Benn's sentence and remand for resentencing on two counts of first degree murder.
¶ 29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: MORGAN, J.P.T., and HUNT, J.
NOTES
[1] Later, the Ninth Circuit held that the withheld impeachment evidence "reveal[ed] that Patrick, a critical witness for the state, was `completely unreliable, a liar for hire, [and] ready to perjure himself for whatever advantage he could squeeze out of the system.'" Benn, 283 F.3d at 1059. (quoting Benn v. Wood, No. C98-5131FDB, 2000 U.S. Dist. LEXIS 12741, at *13-14, 2000 WL 1031361, at *4 (June 2000)).
[2] The court held, (1) Benn was not denied effective assistance of counsel; (2) evidence supported a finding that Patrick was not an agent of law enforcement; (3) the State did not violate Brady; (4) Benn was competent to be executed; and (5) the death penalty statute is constitutional.
[3] He argued that under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), the Washington State Constitution offers more double jeopardy protection than the U.S. Constitution, and as such, the court should find that re-prosecution is prohibited when the State's conduct is intentionally undertaken to prejudice the defendant to the point of denying him a fair trial. Specifically, he argued that the court should dismiss the information the prosecutor committed misconduct in the first trial.
[4] In Davis, the prosecution charged the defendant with (1) vehicular homicide, (2) driving an automobile while intoxicated, and (3) reckless driving. See Davis, 190 Wash. at 164, 67 P.2d 894. The jury returned a "not guilty" verdict on vehicular homicide and did not return verdicts as to the other counts. Davis, 190 Wash. at 164-65, 67 P.2d 894. The court discharged the jury without explanation. Davis, 190 Wash. at 165, 67 P.2d 894. The State retried Davis for driving an automobile while intoxicated and reckless driving. Davis, 190 Wash. at 164-65, 67 P.2d 894. The Supreme Court held "where an indictment or information contains two or more counts and the jury either convicts or acquits upon one and is silent as to the other, and the record does not show the reason for the discharge of the jury, the accused cannot again be put upon trial as to those counts." Davis, 190 Wash. at 166, 67 P.2d 894 (emphasis added).