******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., with whom ZARELLA and ESPINOSA, Js., join, concurring. I concur in the court's judgment affirming the conviction of the defendant, David B. Terwilliger, of one count of intentional manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55a (a) and 53a-55 (a) (1).[1] Specifically, I agree with the result reached in part I of the majority opinion, which rejects the defendant's claim that this conviction, which was rendered after a jury trial in 2011, that followed his successful appeal from a 2005 conviction via a general verdict finding him guilty of manslaughter in the first degree with a firearm as a lesser included offense of murder, violates his double jeopardy protections under the fifth amendment to the United States constitution.[2] I write separately, however, because I respectfully disagree with the majority's analysis insofar as it does not squarely address an important threshold issue, namely, whether the defendant's 2005 conviction of first degree manslaughter with a firearm, which is an offense that may be committed under numerous statutory alternatives, constitutes an "implied" or "implicit" acquittal triggering double jeopardy protections under *Green* v. *United States*, 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957), when it was obtained by a general verdict that did not specify the applicable statutory alternative. Relying on *United States* v. *Garcia*, 938 F.2d 12 (2d Cir. 1991), cert. denied, 502 U.S. 1030, 112 S. Ct. 868, 116 L. Ed. 2d 774 (1992), and *State* v. *Torrez*, 305 P.3d 944 (N.M. 2013), I conclude that a general verdict convicting a defendant of a single offense, which may be committed in alternative ways, is not an implied acquittal that triggers double jeopardy protections as to any of the charged statutory alternatives. Thus, the defendant's jeopardy for the offense of first degree manslaughter continued following his successful appeal from his 2005 conviction of that offense, rendering his 2011 retrial for that same offense not a violation of his double jeopardy rights with respect to any of the charged statutory alternatives under §§ 53a-55a (a) and 53a-55 (a).

My analysis begins with well settled background principles. "We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense. . . . The [c]lause operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility

that he may be found guilty even though innocent."[3] (Internal quotation marks omitted.) *State* v. *Hedge*, 297 Conn. 621, 665–66, 1 A.3d 1051 (2010).

"[It has become] a venerable principl[e] of double jeopardy jurisprudence that [t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict . . . poses no bar to further prosecution on the same charge."[4] (Citation omitted; internal quotation marks omitted.) *Montana* v. *Hall*, 481 U.S. 400, 402, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987) (per curiam); see also, e.g., *Green* v. *United States*, supra, 355 U.S. 189; *United States* v. *Ball*, 163 U.S. 662, 671–72, 16 S. Ct. 1192, 41 L. Ed. 300 (1896). "Two overlapping theories advanced in support of this rule are, first, that the defendant, by successfully appealing his conviction, waives any double jeopardy objection to a retrial . . . and, second, that jeopardy continues through the appeal and into the subsequent retrial." (Citation omitted.) *State* v. *Boyd*, 221 Conn. 685, 691, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992). I agree with the United States Court of Appeals for the Second Circuit that "the most persuasive theory is that the first jeopardy does not end with conviction, but rather continues through the appeal, and if successful, the remand and retrial are part of the original jeopardy. . . . In other words the second trial, obtained at the defendant's own request, is a facet of the original jeopardy and is not a second prosecution for the same offense." (Citations omitted.) *Boyd* v. *Meachum*, 77 F.3d 60, 63 (2d Cir.), cert. denied sub nom. *Boyd* v. *Armstrong*, 519 U.S. 838, 117 S. Ct. 114, 136 L. Ed. 2d 66 (1996).

A successful appeal does not, however, give the state the opportunity to take a complete "mulligan"[5] at the defendant's new trial, because a defendant may not be retried for charges of which he was acquitted at the first trial, either expressly or implicitly. See, e.g., *Green* v. *United States*, supra, 355 U.S. 192. In *Green*, which is the leading case on implied acquittals, the United States Supreme Court concluded that a jury's verdict that convicted a defendant of a lesser included offense, but was silent as to the greater offense, constituted an implied acquittal of the greater offense when the jury had been "given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so" with respect to the greater offense. Id., 190–91. The court concluded that the jury's verdict convicting the defendant of the lesser included offense of second degree murder, but remaining silent on the greater offense of first degree murder, was no different than if it "had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.' " Id., 191. Thus, the Supreme Court held that the defendant's double jeopardy rights were

violated by retrying him for first degree murder after he had successfully appealed from his conviction of the lesser included offense of second degree murder, rendered on a jury verdict that was silent as to the greater offense of first degree murder.[6] Id.; see also id., 190 (The court noted that the defendant "was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him."); accord *Price* v. *Georgia*, 398 U.S. 323, 329–31, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) (concluding that double jeopardy precluded reprosecution for murder following reversal of conviction of lesser included offense of manslaughter in first degree because initial verdict was implied acquittal of murder, and overturning second manslaughter conviction because court could not "determine whether or not the murder charge against [the] petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue to debate his innocence").

Moving beyond the federal cases, the implied acquittal doctrine has been well established as a matter of Connecticut law since this court's decision in *State* v. *Troynack*, 174 Conn. 89, 99, 384 A.2d 326 (1977). See, e.g., *State* v. *Sawyer*, 227 Conn. 566, 586–87, 630 A.2d 1064 (1993) (discussing double jeopardy implications stemming from implied acquittal doctrine in adopting "acquittal first instruction" to transition jury deliberation from charged greater offense to lesser included offenses); *State* v. *Rodriguez*, 180 Conn. 382, 398–99, 429 A.2d 919 (1980) ("where a defendant is convicted of a lesser offense than that charged, that conviction is an implicit acquittal on the greater offense").

Beyond lesser included offenses, the implied acquittal doctrine has a somewhat more limited application in cases wherein a defendant is charged and tried under multiple statutory alternatives for committing the same offense, such as manslaughter in the first degree committed intentionally in violation of § 53a-55 (a) (1) or recklessly in violation of § 53a-55 (a) (3). The jurisprudence of the lower federal courts and our sister states is near uniform in holding that, as a general rule, when a jury renders a verdict convicting a defendant of a single offense that is charged under multiple statutory alternatives that finds him guilty as to one alternative, but is silent as to the other alternatives, there is no implied acquittal with respect to those alternatives on which the jury remained silent. See *United States ex rel. Jackson* v. *Follette*, 462 F.2d 1041, 1045–46 (2d Cir.), cert. denied sub nom. *Jackson* v. *Follette*, 409 U.S. 1045, 93 S. Ct. 544, 34 L. Ed. 2d 496 (1972);[7] *Beebe* v. *Nelson*, 37 F. Supp. 2d 1304, 1308 (D. Kan. 1999); *Schiro* v. *State*, 533 N.E.2d 1201, 1207–1208 (Ind.), cert. denied, 493 U.S. 910, 110 S. Ct. 268, 107 L. Ed. 2d 218 (1989); *State* v. *Pexa*, 574 N.W.2d 344, 347 (Iowa 1998); *State* v. *Wade*,

284 Kan. 527, 543–44, 161 P.3d 704 (2007); *State* v. *Moulden*, 292 Md. 666, 678–79, 441 A.2d 699 (1982); *Commonwealth* v. *Carlino*, 449 Mass. 71, 80, 865 N.E.2d 767 (2007); *State* v. *Torrez*, supra, 305 P.3d 948; *People* v. *Jackson*, 20 N.Y.2d 440, 452, 231 N.E.2d 722, 285 N.Y.S.2d 8 (1967), cert. denied, 391 U.S. 928, 88 S. Ct. 1815, 20 L. Ed. 2d 668 (1968); *State* v. *Wright*, 165 Wn. 2d 783, 798, 203 P.3d 1027 (2009); *State* v. *Kent*, 223 W. Va. 520, 527, 678 S.E.2d 26 (2009); but see *State* v. *Hescock*, 98 Wn. App. 600, 611, 989 P.2d 1251 (1999) (following *Terry* v. *Potter*, 111 F.3d 454 [6th Cir. 1997], and *State* v. *Davis*, 190 Wn. 164, 67 P.2d 894 [1937], and concluding that trial court's silence on one charged forgery statutory alternative, while convicting on other, operated as implied acquittal). Under these cases, "when jeopardy continues due to the reversal of a conviction for trial error, the defendant remains in jeopardy of conviction under any appropriate alternative theory of liability"; *State* v. *Wright*, supra, 802; because "when an individual is prosecuted for committing a single offense that can be committed in multiple ways, jeopardy attaches to the offense as a whole rather than to the particular form in which it is tried, so that if an individual succeeds in getting a conviction set aside, the defendant's 'continuing jeopardy' applies to any alternative way of committing the same offense." Id., 800; see also id., 801 ("A defendant charged and tried under multiple statutory alternatives experiences the same jeopardy as one charged and tried on a single theory. The defendant is in jeopardy of a single conviction and subject to a single punishment, whether the [s]tate charges a single alternative or several.").

There is, however, an exception to this general rule, under which a jury's verdict finding the defendant guilty with respect to one statutory alternative operates as an implied acquittal as to *factually inconsistent* statutory alternative ways of committing the same offense. Put differently, courts will "imply an acquittal [if] a conviction of one crime logically excludes guilt of another crime." *Commonwealth* v. *Carlino*, supra, 449 Mass. 78; compare *Terry* v. *Potter*, supra, 111 F.3d 458–60 (declining to follow Second Circuit's decision in *Follette* and appearing to limit implied acquittals to lesser included offenses, and holding that jury's guilty verdict of murder under "wanton murder"—or reckless—statutory alternative, "can be interpreted" as implied acquittal as to intentional murder alternative on which jury was silent),[8] and *People* v. *Gause*, 19 N.Y.3d 390, 395–96, 971 N.E.2d 341, 948 N.Y.S.2d 211 (2012) (jury verdict of guilty of depraved indifference murder in second degree implied acquittal of separate count charging second degree murder under intentional act alternative because state case law demonstrates that they "are inconsistent counts, as guilt of one necessarily negates guilt of the other" and "[the] defendant's subsequent retrial on the intentional murder charge, after the rever-

sal of his depraved indifference murder conviction, is prohibited under double jeopardy" [internal quotation marks omitted]), with *United States* v. *Ham*, 58 F.3d 78, 85–86 (4th Cir.) (concluding that jury's failure to select certain predicate acts in racketeering verdict was not implied acquittal because "[n]othing in the jury's verdict . . . establishes a fact inconsistent with a finding of guilt on the predicate acts"), cert. denied, 516 U.S. 986, 116 S. Ct. 513, 133 L. Ed. 2d 422 (1995), *Commonwealth* v. *Carlino*, supra, 78 ("here the jury convicted on theories of premeditation and extreme atrocity or cruelty, and nothing in those conclusions logically requires the conclusion that the jury must have acquitted the defendant of felony-murder"), and *State* v. *Kent*, supra, 223 W. Va. 525 (no implied acquittal when jury's verdict "merely elected between two alternative forms of [first degree] murder," noting that guilt as to one alternative was not inconsistent with guilt as to other). In my view, this formulation of implied acquittal doctrine is consistent with our case law, which does not strictly limit application of that doctrine to lesser included offenses. Indeed, this court has taken a broader view that considers the nature of the crimes charged and the manner in which the jury was instructed to render a verdict. See *State* v. *Troynack*, supra, 174 Conn. 99 ("Although the conviction in this case was for a crime which was not a lesser included offense of the offense charged, the trial court instructed the jury that if they did not find [the defendant] guilty of manslaughter in the first degree, they must then consider whether he was guilty of manslaughter in the second degree. The verdict of guilty of manslaughter in the second degree was thus an implicit acquittal on the greater offense. The defendant, therefore, cannot be retried for the crime of manslaughter in the first degree." [Emphasis omitted.]).

Thus, I turn to an examination of the record in the present case and the law concerning the first degree manslaughter charge to determine whether the jury's 2005 general verdict convicting the defendant of manslaughter with a firearm in the first degree in violation of § 53a-55a, which was silent as to whether the conviction via intentional manslaughter in violation of § 53a-55 (a) (1) or reckless manslaughter in violation of § 53a-55 (a) (3), had the effect of being an implied acquittal under *Green* v. *United States*, supra, 355 U.S. 184, as to either statutory alternative, thereby precluding the defendant's retrial and conviction for the same offense in 2011. With respect to the nature of the manslaughter offense at issue in this appeal, I agree with the majority's characterization of §§ 53a-55a (a) and 53a-55 (a) under *State* v. *Marino*, 190 Conn. 639, 650–51, 462 A.2d 1021 (1983), overruled on other grounds by *State* v. *Chapman*, 229 Conn. 529, 541–42, 643 A.2d 1213 (1994), as "creat[ing] only one crime—manslaughter in the first degree—and treat[ing] the two subdivisionsections at

issue here as alternative ways to commit that crime." I also agree with the majority that "the same evidence may support both mental states and, thus, the state may charge the defendant with offenses that include inconsistent mental states." (Emphasis omitted.) See footnote 9 of the majority opinion; see also *State* v. *Rodriguez*, supra, 180 Conn. 404–405. Finally, I agree with the majority's decision to assume, without deciding,[9] that under *State* v. *King*, 216 Conn. 585, 593–94, 583 A.2d 896 (1990), the jury could not properly convict the defendant of both charged statutory alternatives, intentional manslaughter under § 53a-55 (a) (1), or reckless manslaughter under § 53a-55 (a) (3). Thus, for purposes of the present appeal, the jury's 2011 verdict finding the defendant guilty of intentional manslaughter with a firearm means that it could not have found that he acted recklessly. The question, however, is whether we can afford similar effect to the jury's general verdict in 2005, finding the defendant guilty of first degree manslaughter with a firearm, but not specifying the statutory basis for the conviction.

I conclude that no aspect of the 2005 general verdict can be construed as an implied acquittal for purposes of triggering double jeopardy protections. I find especially persuasive the New Mexico Supreme Court's decision in *State* v. *Torrez*, supra, 305 P.3d 947, wherein a jury returned a general verdict finding the defendant guilty of first degree murder at his first trial, after having been charged with that offense "under two alternative theories: felony murder and depraved mind murder." The trial judge then indicated in the judgment and sentence that the defendant "was found guilty of '[m]urder in the [f]irst [d]egree ([f]elony [m]urder).' " Id. On retrial following a successful appeal, the state refiled the charges under both theories; the defendant was subsequently convicted of felony murder. Id. The New Mexico Supreme Court rejected the defendant's argument that, "because the judgment and sentence entered in the first trial stated that he was found guilty of felony murder, he was implicitly acquitted of depraved mind murder" and that "his right to be free from double jeopardy was violated because he can only be retried 'for the offense which resulted in a conviction in the first trial'—i.e., felony murder." Id. The New Mexico court first held, because of the general verdict that meant that "neither we nor the district court could know under which theory [the] [d]efendant was convicted," the trial judge "should simply have entered a judgment stating that the jury found [the] [d]efendant guilty of first degree murder. [The] [d]*efendant was neither expressly nor impliedly acquitted of depraved mind murder.*" (Emphasis added.) Id.; see also id., 948 ("retrial under both first degree felonies—felony murder and depraved mind murder—did not violate [the] [d]efendant's right to be free from double jeopardy").

Similarly, in *Garcia*, the Second Circuit concluded

that a general verdict of guilty on an extortion charge provides "no basis" for an implied acquittal under *Green* v. *United States*, supra, 355 U.S. 184, because the defendants "were convicted on the contested charge, and the only unanswered question was under which of two extortion theories the jury had based its conviction. *And since the jury was never asked to state the basis for its conviction on the extortion charge, its silence on the question, unlike the silence of the jury in Green, signifies nothing.*" (Emphasis added.) *United States* v. *Garcia*, supra, 938 F.2d 15; see also id., 16 ("Thus, here, as in so many other cases, the uncertainty over theories could have been clarified through the use of special interrogatories, which would have obviated the need for a retrial. Had the jury based its verdict on the 'wrongful use of fear' theory only, then there would have been an implicit acquittal on the alternative theory and a retrial would have violated the double jeopardy clause. Had the jury clearly based its verdict on the theory of extortion under color of official right, or both theories, not only would there not have been a double jeopardy problem, but there would not even have been a reversal on the first appeal. Instead, we would have affirmed the convictions, because there was sufficient evidence to support a conviction for extortion under the official-right theory.").

Relying on these well reasoned authorities, I conclude that the jury's general verdict in 2005, which convicted the defendant of manslaughter in the first degree with a firearm in violation of § 53a-55a (a), was not an implied acquittal as to either statutory alternative incorporated through § 53a-55 (a). As the majority observes, determining the factual basis for the general verdict would require impermissible speculation, and I decline to attribute the serious double jeopardy consequence of an acquittal to pure speculation, particularly given the significant public policy bases that support permitting retrials after most successful appeals. See, e.g., *Montana* v. *Hall*, supra, 481 U.S. 402–403; see also footnote 4 of this opinion. Accordingly, I agree with the majority's conclusion that the defendant has not demonstrated the existence of a double jeopardy violation, and would affirm his 2011 conviction for intentional manslaughter in the first degree with a firearm.

[1] General Statutes § 53a-55a (a) provides: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

General Statutes § 53a-55 (a) provides: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under

the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] " 'The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. See *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).' " *State* v. *Alvarez*, 257 Conn. 782, 787, 778 A.2d 938 (2001).

[3] As the majority notes, "when the state charges a defendant in separate counts with a jeopardy barred offense and an offense that is not so barred, and the jury finds the defendant guilty on both counts, the defendant is entitled to a new trial on the nonbarred offense unless the state is able to prove beyond a reasonable doubt that the joinder of the two charges did not prejudice the defendant. . . . When a jeopardy barred charge has been joined with a permissible charge, however, [t]he question is not whether the accused was actually prejudiced [by the joinder], but whether there is [a] reasonable possibility that he was prejudiced." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Hedge*, supra, 297 Conn. 666–67. Because I conclude that there was no jeopardy barred offense in this case, I do not reach this portion of the *Hedge* analysis, which is in essence a harmless error inquiry. See, e.g., *Morris* v. *Mathews*, 475 U.S. 237, 245–47, 106 S. Ct. 1032, 89 L. Ed. 2d 187 (1986); *Price* v. *Georgia*, 398 U.S. 323, 329–31, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970).

[4] This principle is rooted in the policy concern that it would "be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves [the] defendants' rights as well as society's interest." (Internal quotation marks omitted.) *Montana* v. *Hall*, 481 U.S. 400, 403, 107 S. Ct. 1825, 95 L. Ed. 2d 354 (1987) (per curiam).

[5] "A 'mulligan' is 'a free shot sometimes awarded a golfer in nontournament play when the preceding shot has been poorly played.' " *Bortner* v. *Woodbridge*, 250 Conn. 241, 256 n.15, 736 A.2d 104 (1999); see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2003).

[6] In so concluding, the Supreme Court rejected the government's argument that the defendant " 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a successful appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. . . . When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to [forgo] his constitutional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice." (Citation omitted; emphasis omitted.) *Green* v. *United States*, supra, 355 U.S. 191–92; see also id., 193 (describing government's waiver argument in "plain terms" as impermissibly requiring defendant "to barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty [years of] imprisonment").

[7] The decision of the United States Court of Appeals for the Second Circuit in *United States ex rel. Jackson* v. *Follette*, supra, 462 F.2d 1041, appears to be the leading case with respect to whether a jury's verdict, convicting a defendant on one statutory alternative, but remaining silent as to the others, constitutes an implied acquittal as to the alternatives on which it remained silent. In that case, the defendant was charged with first degree

murder of a police officer under statutory alternatives of felony murder and premeditated murder, and "[w]ithout objection by [the defendant], the jury was . . . instructed that if it returned a verdict on one count it was to remain silent on the other. The conviction was for premeditated murder, and no verdict was rendered as to felony murder." (Footnote omitted.) Id., 1043. The defendant successfully appealed from that conviction, and was retried for first degree murder under both theories; at that second trial, "the jury found [him] guilty . . . of felony murder and remained silent on premeditated murder." Id., 1044. The Second Circuit rejected the defendant's argument that his retrial under the statutory alternative of felony murder violated his rights against double jeopardy because the jury's verdict at the first trial had impliedly acquitted him, through its silence, of the statutory alternative of felony murder. After characterizing the United States Supreme Court's implied acquittal cases, such as *Green* v. *United States*, supra, 355 U.S. 184, as limited to lesser included offenses, the Second Circuit held that jeopardy attached and continued as to the entire offense of first degree murder, despite the first jury's silence as to the felony murder alternative. *United States ex rel. Jackson* v. *Follette*, supra, 1045–47. In so concluding, the court balanced the "competing interests of the public and [the] petitioner," observing that (1) premeditated murder and felony murder were not factually inconsistent given the evidence in the case, (2) the evidence with respect to proof of the alternatives was cross admissible, meaning that there was no prejudice to the defendant on retrial, (3) neither party sought narrowing instructions or a special verdict at the first trial, and (4) it was undisputed that the defendant was subject to retrial on the premeditated murder count, meaning that the felony murder count "did not subject him to a greater penalty or stigma or greater embarrassment, expense or ordeal." Id., 1049–50.

[8] I note my disagreement with substantial portions of the reasoning contained within the opinion of the United States Court of Appeals for the Sixth Circuit in *Terry* v. *Potter*, supra, 111 F.3d 454, much of which I believe may be read broadly as an unconditional conclusion that a guilty verdict under one statutory alternative is *always* an implied acquittal of all other charged statutory alternatives, regardless of whether the guilty verdict logically requires an acquittal under the other alternatives. See id., 458–60. This is particularly so given the fact that the Sixth Circuit categorically rejected the reasoning of the Second Circuit's decision in *United States ex rel. Jackson* v. *Follette*, supra, 462 F.2d 1041, and its apparent reading of "*Green* as being limited to situations in which a defendant is convicted of a lesser-included offense at the first trial" and "implicitly" concluding that jeopardy attached to the general offense of murder, rather than its particular forms under the unitary statute. *Terry* v. *Potter*, supra, 458–59; see also id., 459–60 (holding that "[w]hen a charge of murder is brought under two separate statutory subsections of a unitary offense . . . jeopardy attaches separately as to each"). Although I agree with the Sixth Circuit insofar as it extends the implicit acquittal doctrine beyond lesser included offenses to logically inconsistent alternatives, I disagree with its somewhat conclusory analysis of the silent aspects of the verdict. Rather, I read the Sixth Circuit's decision in *Terry* as properly limited to cases wherein a finding of guilt on both statutory alternatives is logically inconsistent.

[9] I agree with the majority that this assumption is appropriate in light of the appeal pending before this court in *State* v. *Nash*, SC 19265, which was argued on October 22, 2014. See footnote 10 of the majority opinion.