COMMONWEALTH *vs.* WILLIAM J. COYNE.

Middlesex. January 12, 1995. - April 11, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Capital case. *Homicide. Intoxication.*

Evidence at a murder trial supported the verdict of premeditated murder: no reason appeared to warrant this court's exercise of its power under G. L. c. 278, § 33E, to reduce the verdict to second degree murder. [36-38]

INDICTMENT found and returned in the Superior Court Department on August 26, 1992.

The case was tried before *Robert A. Barton*, J.

*Charles K. Stephenson* for the defendant.

*Judith B. Stephenson*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. After a jury trial, the defendant was found guilty of murder in the first degree based on deliberate premeditation and guilty of unlawful possession of a handgun. The judge imposed the mandatory sentence of life imprisonment. [1] The defendant filed a timely notice of appeal pursuant to G. L. c. 278, § 33E (1992 ed.). On appeal, the defendant concedes that there was no error in the conduct of his trial. The defendant's only claim on appeal is that, in the unique circumstances of this case, we should exercise our power under G. L. c. 278, § 33E, to reduce the defendant's murder conviction to murder in the second degree. We decline to do so and affirm the defendant's conviction.

---

[1]The judge placed the conviction of the unlawful possession of a handgun on file with the defendant's consent and therefore it is not before us on appeal. *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

We briefly summarize the facts. On August 19, 1992, in the early afternoon, the defendant arranged to meet the victim, whom he had been dating during the previous year, at the courthouse in Somerville. The couple had a few drinks at a bar prior to the victim's scheduled appointment at the courthouse. After the courthouse appointment, the defendant and the victim returned to the same bar, where, according to the defendant, the victim had three drinks, and he had five or six beers and "did a line" of cocaine.

At approximately 5 P.M., the defendant and the victim went to another bar, where they continued drinking and using cocaine. On leaving this establishment, the defendant gave the victim money to purchase more cocaine. The couple took a taxi to the defendant's apartment, located at 1374 Broadway in Somerville. On the way to the apartment, they stopped at a liquor store, where the defendant purchased champagne, beer, and orange juice. During the remaining hours of the evening, the defendant and the victim drank champagne, periodically "snorted" cocaine, and engaged in sexual relations.

According to the defendant, at approximately 2 A.M., the victim told the defendant that she did not want to live anymore and that she wanted him to kill her. Later that morning, sometime before 4 A.M., the victim again asked the defendant to kill her. Shortly before 6 A.M., the victim again told him that she did not want to live anymore and that she wanted the defendant to kill her. At that point, the defendant went to his bedroom and obtained his gun. He testified that he "came back into the parlor," and the victim stated, "If you love me, you'll pull the trigger." The defendant shot the victim in the head five times. When he saw the victim's hand shaking, he stepped behind her and shot her again in the head.[2] The defendant then covered the victim's body with a blanket, ingested some more cocaine, drank another beer,

---

[2] At trial, Dr. Antonio E. Boschetti, a medical examiner for the Commonwealth, testified that the victim had been shot six times in the head. In Dr. Boschetti's opinion, any one of the shots could have caused the victim's death.

and then flushed the remaining cocaine wrapper down the toilet.

At approximately 6 A.M., the defendant called the Somerville police and reported that he had shot and killed the victim. When the police arrived at the apartment, the defendant recounted the events leading up to the shooting and again confessed that he had shot the victim.

Under G. L. c. 278, § 33E, we are required to consider the law and the evidence to determine whether a reversal, or in this case a reduction of the murder conviction, is required to prevent a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 452 (1993); *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963). The statute specifically provides that we may direct the entry of a verdict of a lesser degree of guilt "if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require." G. L. c. 278, § 33E. However, we have stated that it is not our function to second guess the jury. *Commonwealth* v. *Gaulden*, 383 Mass. 543, 555-556 (1981).

If, on our examination of the facts, we determine that there was a miscarriage of justice in convicting the defendant of murder in the first degree and that a verdict of murder in the second degree would be more consonant with justice, then it is our duty to reduce the verdict. See *Commonwealth* v. *Williams*, 364 Mass. 145, 150 (1973). We are mindful of the goal of assuring a uniformity of treatment of convicted defendants, but we recognize that each case depends on its particular facts. See *Commonwealth* v. *Gaulden*, *supra* at 554. We may consider the defendant's criminal record or lack thereof and other evidence of the defendant's character to which the jury may or may not have had access. *Commonwealth* v. *Jefferson*, 416 Mass. 258, 267 (1993). In some of the cases where the verdict has been reduced, it has been noted that there was no evidence of the defendant's prior criminality, and the defendant had never before manifested any violent tendencies. See *Commonwealth* v. *Keough*, 385

Mass. 314, 321 (1982); *Commonwealth* v. *Mahnke*, 368 Mass. 662, 703 (1975), cert. denied, 425 U.S. 959 (1976). We have also taken into account the relationship between the defendant and the victim and any mitigating circumstances which may indicate that a verdict of murder in the first degree may not have been appropriate. See *Commonwealth* v. *Sama*, 411 Mass. 293, 298-299 (1991) (debilitating intoxication); *Commonwealth* v. *Dalton*, 385 Mass. 190, 196-197 (1982) (good relationship between defendant and victim).

The defendant contends that justice requires that we exercise our power to reduce his sentence due to the unique circumstances of his case. The defendant argues that the fact that the victim asked him to kill her, that the two had a close relationship, and that their conduct was the result of excessive consumption of cocaine and alcohol, combined with evidence of the defendant's character, does not support the conclusion that the killing was deliberate and premeditated.

We are satisfied that the facts of this case support the verdict of premeditated murder. The defendant left the victim, went down the hall to his bedroom, took out a gun from his jacket, returned to the parlor, raised his gun, and repeatedly shot the victim in the head. See *Commonwealth* v. *Stillwell*, 366 Mass. 1 (1974), cert. denied sub nom. *McAlister* v. *Massachusetts*, 419 U.S. 1115 (1975) (relief denied where defendant leaves scene, procures weapon, returns to do murderous work). After shooting the victim five times in the head, the defendant testified that he observed the victim's hand moving so he stepped behind her and put the gun to the top of her head and pulled the trigger again. Accepting that this killing may not have been planned over an extended period of time, it could still amount to murder in the first degree because the period of premeditation need not be an extended one. See *Commonwealth* v. *Whipple*, 377 Mass. 709, 714 (1979), citing *Commonwealth* v. *Tucker*, 189 Mass. 457, 494-495 (1905). In light of the evidence that the defendant left the victim to get a gun, and proceeded to shoot the victim six times in the head, with each shot capable of killing

the victim, we are not persuaded that a finding of murder in the second degree would be more consonant with justice.

Although a condition of drunkenness may be so severe as to render premeditation impossible, the intoxication appearing in this case does not compel us to conclude that the defendant was not able to form the requisite intent to kill the victim. See *Commonwealth* v. *Whipple, supra.* The evidence presented by other witnesses concerning their perceptions of the defendant's level of intoxication, as well as the defendant's own account of his behavior, was more than sufficient to support a finding that the defendant's judgment was not impaired to such a degree that he was not able to form the intent to kill. Three police officers testified that, in their opinion, the defendant appeared coherent and cooperative when he telephoned the police, when they arrived at his apartment, and later at the police station. They further testified that he walked without staggering, and he had no difficulty standing. There was also no noticeable deficiency in his speech. The defendant spoke clearly and coherently. Additionally, the defendant's own detailed account of his behavior and of the events on the night of the murder indicate that the alcohol and drugs did not have a severe debilitating effect. The defendant's behavior indicates very deliberate and purposeful actions. He knew exactly where he kept the gun and specifically went to the bedroom to retrieve it. He put a blanket over the victim after he shot her so he would not have to see her body. He flushed any evidence of their cocaine use down the toilet so that his roommate, a Somerville police officer, would not get in trouble. He fired the gun six times, hitting the victim in the head each time. Additionally, he was capable of giving the police three extensive statements, specifically going over the details of his actions. While at the police station, he also explained and demonstrated how he held the gun and how he aimed before he fired. With evidence of such deliberate and detailed behavior, we are unpersuaded that the defendant's alcohol and cocaine consumption rendered deliberate, premeditation impossible or unlikely.

Neither is the evidence of the defendant's character and his relationship with the victim such as to lead us to reduce the sentence. The defendant had been convicted of assault by means of a dangerous weapon. He could not produce a license for the firearm with which he shot the victim. Additionally, one of the police reports indicates that the officers received information from one of the victim's former boy friends that, on one occasion, the defendant had threatened him and another individual with a gun.

Although the defendant and the victim had been dating for over one year, there was evidence of hostility and threatening behavior in their relationship. There was also testimony that the defendant threatened to kill the victim in July of 1992.

The jury found the defendant guilty of murder in the first degree although lesser verdicts were open to them under the judge's instructions. The defendant has not persuaded us that allowing this verdict to stand would result in a substantial likelihood of a miscarriage of justice. Therefore, we decline to exercise our extraordinary authority to grant relief under G. L. c. 278, § 33E.

*Judgment affirmed.*