COMMONWEALTH *vs.* THOMAS P. CARLINO.

Bristol. January 5, 2007. - May 8, 2007.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, & CORDY, JJ.

*Homicide. Felony-Murder Rule. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Instructions to jury, Double jeopardy, Verdict.

At a murder trial, the judge did not err in declining to issue a "castle law" instruction, where the killing did not occur inside the defendant's dwelling. [75-76]

At the retrial of an indictment charging the defendant with murder in the first degree, principles of double jeopardy did not prohibit resubmission to the jury of the murder charge on a felony-murder theory, where the failure of the jury in the first trial to check the box for felony-murder on the verdict slip did not operate as an acquittal on that theory. [76-80]

This court declined to exercise its power under G. L. c. 278, § 33E, to reduce a verdict of murder in the first degree or to order a new trial. [80-82]

INDICTMENT found and returned in the Superior Court Department on June 23, 1994.

After review by this court, 429 Mass. 692 (1999), the case was tried before *Nonnie S. Burnes,* J.

*John H. Cunha, Jr.* (*Charles Allen Hope* with him) for the defendant.

*M. Catherine Huddleson,* Special Assistant District Attorney (*Tara L. Blackman,* Assistant District Attorney, with her) for the Commonwealth.

The following submitted briefs for amici curiae:

*Timothy J. Cruz,* District Attorney, & *Robert C. Thompson,* Assistant District Attorney, for District Attorney for the Plymouth District.

*William R. Keating,* District Attorney, & *Varsha Kukafka,* Assistant District Attorney, for District Attorney for the Norfolk District & others.

COWIN, J. A jury convicted the defendant of murder in the first degree on two theories: premeditation and extreme atrocity

or cruelty.[1] The verdict slip, which listed separately the three theories of murder in the first degree, did not indicate whether the jury convicted or acquitted the defendant on the theory of felony-murder.[2] We set aside the conviction in *Commonwealth v. Carlino*, 429 Mass. 692 (1999), and the defendant was retried for murder.[3] At the second trial, the jury were again presented with the option of finding the defendant guilty of murder in the first degree on any or all of the three theories, including felony-murder. This time the jury convicted on all three theories. At both trials, the judge did not instruct concerning the "castle" law, G. L. c. 278, § 8A.[4]

The defendant appeals, arguing that (1) he is entitled to a third trial because the judge should have given an instruction on the castle law; and (2) given the prohibition against double jeopardy, he could not be retried on the felony-murder theory after the first jury did not convict him on that ground. Alternatively, the defendant seeks a reduction of the conviction pursuant to our authority under G. L. c. 278, § 33E. We affirm and decline to exercise our power under § 33E.[5]

*Facts.* We summarize the evidence in the light most favorable to the defendant, primarily recounting his trial testimony,[6] and calling attention to countervailing evidence.[7] The defendant lived with his adult foster son, Robert Smith, in a trailer in Fall

[1] He was also convicted of unlawful possession of a sawed-off shotgun.

[2] The underlying felony supporting the felony-murder theory was the defendant's possession of the sawed-off shotgun.

[3] The conviction of unlawful possession of the sawed-off shotgun was not vacated.

[4] General Laws c. 278, § 8A, provides in pertinent part that "[i]n the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense . . . ." The statute contains other requirements that are not relevant to this case.

[5] After oral argument, we solicited amicus briefs as to whether a jury's silence on a theory of murder constitutes an implied acquittal of that theory. We acknowledge the amicus briefs submitted by the district attorneys of several districts and the separate amicus brief submitted by the district attorney for the Plymouth district.

[6] The defendant's testimony from his first trial was read into the record at the retrial. It was considerably less inculpatory than statements made by the defendant to the police immediately after the incident.

[7] The double jeopardy issue is a question of law. We state the facts relevant

River. A ninety-foot driveway led from the street to within a few feet of the trailer. During the evening of May 31, 1994, the defendant found the victim outside his trailer. The defendant offered food and shelter to the victim, but the defendant later discovered the victim looking under the defendant's truck while holding a lighter. The victim threatened the defendant and a physical altercation ensued. The defendant ordered the victim off his property. The victim left but threatened to return and "take care of both of you."

Later that night, the victim did return. He stood outside the defendant's trailer with a meat cleaver and a baseball bat, beat the defendant's trash cans and trailer, and yelled threats such as "Come on out. I'm going to kill you." The defendant awoke but remained in an intoxicated "stupor" and did not "know what was going on." He could not "remember too much of what went on that particular night," although he provided many details.

Smith went outside while the defendant dressed. The defendant heard Smith shouting, and grabbed what he called his "equalizer," a twelve-gauge sawed-off shotgun. Two types of ammunition, both birdshot and buckshot, were available, but because of his intoxicated state, the defendant unknowingly loaded the shotgun with buckshot.

As the defendant left the trailer with his shotgun to confront

---

to the remaining issues, specifically whether the defendant was entitled to the so-called "castle law" instruction and to our review under G. L. c. 278, § 33E. We look at the facts in two different ways. "In determining the defendant's entitlement to a 'castle law' instruction, the evidence must be viewed in the light most favorable to [him]." *Commonwealth* v. *Peterson,* 53 Mass. App. Ct. 388, 389 (2001), citing *Commonwealth* v. *Pike,* 428 Mass. 393, 395 (1998). "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. . . . However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967), quoting *People* v. *Carmen,* 36 Cal.2d 768, 773 (1951). In contrast, for purposes of review under G. L. c. 278, § 33E, we engage in plenary review and consider the thrust of the credible evidence. We need not credit the defendant's testimony or make all reasonable inferences in his favor for purposes of our review pursuant to § 33E. See *Commonwealth* v. *Jefferson,* 416 Mass. 258, 267-268 (1993) (burden on defendant to persuade court that justice requires reduction of verdict).

the victim, an unknown and never identified assailant allegedly fired a shot from a concealed position. That shot did not hit anyone. The defendant nonetheless focused on the victim, who was "rolling around on the ground," fighting with Smith on the driveway. The defendant fired one shot at the victim's legs at close range. The victim was bloodied and "lashed out" at the defendant with a knife. In the affray, the victim was stabbed fifteen times. The defendant admitted to taking the knife, but claimed not to remember actually stabbing the victim. A psychologist testified that the defendant's lapse of memory could be the result of "dissociation," a trauma-induced memory loss.

The defendant's trial testimony was contradicted by his own statements to police immediately after the event, the testimony of the Commonwealth's witnesses, and forensic evidence.[8] A witness saw the victim walking to the defendant's home and heard the victim yelling "continuously" until silenced by a single gunshot. She did not hear a second shot close in time to the first, suggesting that there was no second assailant.[9] The defendant told police that he had shot the victim, knocking him into the street, and that he was five to ten feet from the victim and five feet from Smith when he fired the shot. The defendant did not mention to the police any actual fighting between the victim and Smith. The defendant also said that, although there was another person at the scene, that person did not attack him. Ballistics evidence showed that the defendant was between twenty and thirty feet from the victim, further undermining the defendant's exculpatory version of events. Autopsy results revealed that the victim's upper leg, hip, and hand were totally shattered by the shotgun blast, and a doctor testified that the victim would have been wholly incapacitated by those injuries. His leg and hand were rendered useless and the wounds were "exquisitely painful," contradicting the defendant's claim that the victim attacked him after being shot. The defendant claimed

---

[8]Smith did not testify.

[9]Another witness, a private security guard, also heard the shot. He then encountered the first witness and contacted police. After at least two minutes elapsed, the witness heard another "boom." He testified that it was common at that time to hear gunshots in the neighborhood. The witness also recalled a suspicious person in the vicinity.

initially that the fifteen stab wounds, twelve of which would have been fatal in the absence of any other, were not stab wounds at all, but the result of the shotgun blast; he asserted that the victim was not stabbed, further undermining his credibility.

Shortly after the attack on the victim, the defendant returned the shotgun to his trailer, locked the trailer, and loaded the victim into the bed of a pickup truck. Before the defendant could leave, police arrived in response to a telephone call. The defendant believed that the victim was alive when the officers arrived, but did not tell the police about the victim or his injuries, and, in response to an initial inquiry, he told the police that he had not heard any shots.[10] Police saw a pool of blood at the side of the street and a trail of blood the length of the driveway. An officer checked the bed of the truck and discovered the victim's body under a tarpaulin.

At the second trial, the judge instructed on the three theories of murder in the first degree, murder in the second degree, and manslaughter. She also instructed on self-defense, defense of another, provocation, and other mitigation. The judge did not give an instruction on the castle law. See G. L. c. 278, § 8A.[11] The defendant was convicted of murder in the first degree on all three theories.

*Discussion.* 1. *"Castle law" instruction.* The defendant claims that he was erroneously deprived of a jury instruction concerning the so-called "castle" law. The statute, G. L. c. 278, § 8A, expressly limits use of the defense to "an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling," where the person charged "was in his dwelling at the time of the offense." *Id.* Even viewing the evidence in the light most favorable to the defendant, he and the victim were in the driveway during the fatal encounter, not in the defendant's dwelling. In the appeal after the first trial, we determined that those facts did not warrant an instruction concerning the castle law. *Commonwealth* v. *Carlino*, 429 Mass. 692, 697 (1999). The judge at retrial accordingly did not give

---

[10]No issue is raised concerning the Miranda warnings.

[11]Counsel did not request such an instruction at the retrial; the defendant asked to address the court and requested the instruction.

the instruction. We have since determined that the defense provided by § 8A did not apply to an encounter on the exterior stairs and porch of a dwelling, confirming the inapplicability of the defense here. *Commonwealth* v. *McKinnon,* 446 Mass. 263, 267 (2006). The language of § 8A and our earlier decisions resolve the issue. There was no error.

2. *Double jeopardy.* The defendant invokes the prohibition on double jeopardy in contending that his conviction of murder in the first degree was tainted because at his second trial the jury were presented with, and allowed to convict on, a felony-murder theory that he argues was rejected by the jury in the first trial.[12] "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Serfass* v. *United States,* 420 U.S. 377, 387 (1975), quoting *Green* v. *United States,* 355 U.S. 184, 187 (1957). The defendant maintains that the prohibition against being placed in jeopardy twice for the same offense barred resubmission of the murder charge on a felony-murder theory at his retrial.[13]

In addition to felony-murder, the defendant was also convicted on theories of deliberate premeditation and extreme atrocity or cruelty. Those theories independently support the conviction of murder in the first degree. As the defendant

[12]The defendant does not state expressly whether he relies on State or Federal law. He draws support from a case of this court, *Commonwealth* v. *Crawford,* 429 Mass. 60, 70 n.18 (1999), that *itself* does not specify the precise ground of decision.

[13]Because the defendant raised the issue of double jeopardy only after the second jury were empanelled, the Commonwealth maintains that he has waived the right. See *Poretta* v. *Commonwealth,* 409 Mass. 763, 766-769 (1991) (claim of double jeopardy subject to ordinary waiver). The cases hold that a defendant must raise any double jeopardy objection before trial, *Lydon* v. *Commonwealth,* 381 Mass. 356, 360 n.7 (1980), cert. denied, 449 U.S. 1065 (1980), see *Bynum* v. *Commonwealth,* 429 Mass. 705, 708 (1999), but the law in this area is not entirely clear. See *Commonwealth* v. *Diaz,* 383 Mass. 73, 82 n.17 (1981) ("The double jeopardy claim is to be considered on appeal although there was no specific objection . . . below"); *Commonwealth* v. *Norman,* 27 Mass. App. Ct. 82, 87-88, *S.C.* 406 Mass. 1001 (1989). Cf. *Commonwealth* v. *Spear,* 43 Mass. App. Ct. 583, 586-587 (1997) (applying waiver). We need not resolve the issue because the defendant's argument fails for other reasons.

conceded at oral argument, it is a moot issue whether conviction on the questioned theory was error. *Commonwealth* v. *Candelario*, 446 Mass. 847, 859-860 (2006). The double jeopardy argument has "no bearing on the defendant's conviction of murder in the first degree." *Commonwealth* v. *Shine*, 398 Mass. 641, 653-654 (1986).[14],[15]

Although the double jeopardy question is moot, in this case, it does "raise[] important issues with implications for the effective administration of justice," *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 391 (2003), that, absent a resolution, will continue to create uncertainty in later trials, see *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). The matter is fully briefed, and we address the question.

We have reproduced, as an appendix to this opinion, a copy of the verdict slip from the first trial. That slip contained a line for not guilty, as well as a line for guilty of murder in the first degree. The jury were instructed, with respect to the latter line, "[i]f the defendant is guilty of murder in the [f]irst [d]egree, please identify the basis for this verdict." There followed three separate lines, one for each murder theory. The jury placed an "X" on the lines for deliberate premeditation and extreme atrocity or cruelty, but left the felony-murder line blank.[16],[17] Plainly, the jury found the defendant guilty of murder in the first degree

---

[14]Nor did the inclusion of the felony-murder theory create a substantial likelihood of a miscarriage of justice with respect to the conviction of murder in the first degree. No evidence was introduced that would have been inadmissible had the theory been withheld. For example, the judge admitted testimony concerning the over-all length of the shotgun, which supported the felony-murder theory, on the basis that it was relevant to the motive for premeditated murder. Furthermore, there is no indication that the inclusion of the felony-murder theory substantially prejudiced the defendant's trial strategy.

[15]The defendant also claims that the underlying felony was "insufficient" to support the felony-murder theory and that the felony "merged with the killing and was unavailable to form the basis for a felony murder conviction." Because the question whether the felony-murder theory should have been tried to the jury is a moot issue, those arguments are unavailing to him.

[16]The verdict slip also contained lines for guilty of murder in the second degree, guilty of voluntary manslaughter, and guilty of involuntary manslaughter. In a separate section, lines appeared for not guilty and guilty of unlawful possession of a sawed-off shotgun.

[17]The judge instructed the jury: "If you determine unanimously that the

on two theories. We cannot determine from the verdict slip what decision the jury reached on the felony-murder theory, except that their verdict cannot be construed as a conviction on that basis.[18] Thus, we must decide whether we are required to treat their silence on the felony-murder theory as an acquittal for purposes of double jeopardy.

The defendant cites the case of *Green* v. *United States*, 355 U.S. 184, 189-198 (1957), for support of the proposition that the jury's failure to mark one of the three theories implies an acquittal on that theory. There, the United States Supreme Court decided that silence on a charge of murder in the first degree and conviction of the lesser included offense of murder in the second degree implied an acquittal of the greater offense. *Id.* Thus, retrial of the greater offense was barred under the Fifth Amendment to the United States Constitution. In *United States* v. *Tateo*, 377 U.S. 463, 465 n.1 (1964), the Court declined to expand the *Green* decision beyond its facts, and the *Green* case has never been interpreted as broadly as argued by the defendant. Courts have refused to imply an acquittal unless a conviction of one crime logically excludes guilt of another crime. See *Cichos* v. *Indiana*, 385 U.S. 76, 80 (1966); *Commonwealth* v. *Nardone*, 406 Mass. 123, 132-134 & n.6 (1989); *Commonwealth* v. *Preston*, 393 Mass. 318, 320, 325 n.8 (1984). See also *Rendon-Alvarez* v. *Commonwealth*, 437 Mass. 40, 42-45 (2002) (conviction on joint venture theory of crime and silence on principal theory implied acquittal of principal theory when judge instructed jury to check "only one box:" not guilty, guilty as principal, or guilty under joint venture theory). By contrast, here the jury convicted on theories of premeditation and extreme atrocity or cruelty, and nothing in those conclusions logically requires the conclusion that the jury must have acquitted the defendant of felony-murder. Most courts that have considered the issue have determined that retrial is not barred in these circumstances. See *United States* v. *Ham*, 58 F.3d 78,

---

defendant is guilty of murder in the first degree, then you would answer the questions . . . as to under which theory or theories, whether it be one, two, or all three."

[18]The jury might have intended an acquittal on the third theory; they might have been unable to reach a unanimous verdict; or they might not have deliberated on that theory at all.

84-86 (4th Cir. 1995); *Beebe* v. *Nelson*, 37 F. Supp. 2d 1304, 1307-1308 (D. Kan. 1999); *State* v. *Pexa*, 574 N.W.2d 344, 347 (Iowa 1998). But see *Terry* v. *Potter*, 111 F.3d 454, 458 (6th Cir. 1997); *State* v. *Hescock*, 98 Wash. App. 600, 603-611 (1999).

The defendant relies on a footnote in *Commonwealth* v. *Crawford*, 429 Mass. 60, 70 n.18 (1999), which suggested obliquely that a jury's silence on any theory of murder in the first degree is impliedly an acquittal.[19] Footnotes in other recent cases also have stated that theories of murder were rejected by juries where the record reflected that the juries were merely silent on the theory while they convicted on other theories. See *Commonwealth* v. *Almonte*, 444 Mass. 511, 512 n.1 (2005); *Commonwealth* v. *DePace*, 433 Mass. 379, 386 n.5 (2001).

The *Crawford*, *Almonte*, and *DePace* footnotes cite no authority for the proposition that a jury's silence implies acquittal for purposes of double jeopardy. The primary authority that we have discovered is a case more than a century old interpreting our common law, *Edgerton* v. *Commonwealth*, 5 Allen 514, 515 (1862).[20] There, we stated that "it is unimportant to consider or know why [the jury] rendered no verdict" on a distinct part of an indictment because "[t]he acceptance by the court of the verdict which they did render, and the judgment consequent thereon, made any further proceedings upon [that] [matter] impossible." See *Commonwealth* v. *Foster*, 122 Mass. 317, 322-323 (1877) (applying *Edgerton* v. *Commonwealth*, *supra*).

However, the *Edgerton* case was not the only early word on the subject. The earlier case of *Commonwealth* v. *Call*, 21 Pick.

---

[19]In *Commonwealth* v. *Crawford*, *supra* at 70 n.18, we decided that there had been an implied acquittal with respect to a particular theory of murder in the first degree where the record showed that the jury's verdict slip was silent concerning that theory.

[20]"Although not expressly included in the Massachusetts Declaration of Rights, the prohibition against double jeopardy has long been recognized as part of our common and statutory law." *Luk* v. *Commonwealth*, 421 Mass. 415, 416 n.3 (1995). See G. L. c. 263, § 7. The common law may sometimes provide greater protection against double jeopardy than does the United States Constitution. *Berry* v. *Commonwealth*, 393 Mass. 793, 798 (1985). Cf. *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339, 350 n.14 (2000) ("we have long recognized a protection against double jeopardy that is coextensive with Federal protection").

509, 514-515 (1839), stated that if a verdict "neither affirms nor denies" the truth of the allegations tried to the jury, "the prisoner must be put again on his trial." Likewise, the more recent case of *Commonwealth* v. *Gonzalez*, 437 Mass. 276, 282 (2002), cert. denied, 538 U.S. 962 (2003), quoting G. L. c. 263, § 7, emphasized the same view that "[a] true acquittal requires a verdict on 'the facts and merits.' "

We conclude that the correct course is the one advanced by the *Call* and *Gonzales* cases, and by our own cases interpreting the Fifth Amendment, as well as those of other courts. Certainly, the United States Constitution does not require a different result. In this case, we cannot discern the jury's intention from their silence. The jury's failure to check the felony-murder box could not operate as a conviction; likewise, it does not operate as an acquittal. We are satisfied that the interests of justice are not served by entry of an acquittal by accident or supposition. To the extent that any of our decisions indicate otherwise, they will be disregarded.

3. *Relief pursuant to G. L. c. 278, § 33E.* The defendant argues that we should reduce the conviction from murder in the first degree to manslaughter pursuant to our authority under G. L. c. 278, § 33E. He claims that the weight of the evidence required such a reduction. We have reviewed the entire transcript pursuant to our obligation under G. L. c. 278, § 33E, and find nothing that creates a substantial likelihood of a miscarriage of justice. We decline to exercise our power to reduce the murder verdict or order a new trial.

"The search under § 33E is a more general and an obligatory one for a result that may be 'more consonant with justice,' " *Commonwealth* v. *Davis*, 380 Mass. 1, 15 n.20 (1980), quoting *Commonwealth* v. *Seit*, 373 Mass. 83, 94 (1977), but " '[w]e do not sit as a second jury to pass anew on the question of the defendant's guilt.' " *Commonwealth* v. *Leahy*, 445 Mass. 481, 501 (2005), quoting *Commonwealth* v. *Reddick*, 372 Mass. 460, 464 (1977). "[W]e must consider the 'thrust' of the evidence, and we must be alert to [] clues that justice has not been achieved." *Commonwealth* v. *Jefferson*, 416 Mass. 258, 267 (1993), quoting *Commonwealth* v. *Williams*, 364 Mass. 145, 152 (1973).

As in *Commonwealth* v. *Reddick, supra,* "[t]he jury were not required to believe, and plainly did not believe, the defendant's testimony" to the extent that it supported provocation, self-defense, defense of another, or other mitigation. They apparently believed the Commonwealth's evidence and theory of the case, the thrust of which was that the defendant purposefully loaded his shotgun with buckshot, went out of his home to confront the victim, and then shot him from a distance while the victim was not engaged in combat with Smith. Although the initial shot left the victim unable to struggle, the defendant stabbed him fifteen times. While the victim bled to death, the defendant attempted to conceal his actions.

Under G. L. c. 278, § 33E, review, we must consider the law and the evidence. The statute specifically states that we may "direct the entry of a verdict of a lesser degree of guilt 'if satisfied that the verdict was against the law or the weight of the evidence . . . or any other reason that justice may require.' " *Commonwealth* v. *Coyne,* 420 Mass. 33, 35 (1995), quoting G. L. c. 278, § 33E. "We may consider the defendant's criminal record or lack thereof and other evidence of the defendant's character to which the jury may or may not have had access." *Commonwealth* v. *Coyne, supra,* citing *Commonwealth* v. *Jefferson, supra.* The defendant previously was convicted of assault and battery with a deadly weapon, assault with intent to kill, and other crimes for shooting with a shotgun another person who intruded onto his driveway approximately eight years earlier.[21,22] Finally, tension

---

[21]The existence of the prior convictions was the subject of much discussion at trial, although the prior convictions were never introduced as evidence.

[22]We decline to consider the probation records of the victim submitted by the defendant. The defendant did not attempt to introduce those records at trial. Unlike other materials considered only on appeal pursuant to G. L. c. 278, § 33E, the records do not pertain to the defendant's character. Cf. *Commonwealth* v. *Coyne,* 420 Mass. 33, 35 (1995) (considering defendant's criminal record); *Commonwealth* v. *Jefferson,* 416 Mass. 258, 267 (1993) (limiting consideration of materials outside trial record to those reflecting on defendant's character). We are not aware of any case in which similar records were considered for purposes of G. L. c. 278, § 33E, when their admission at trial was not requested. In any event, nothing in those materials demonstrates that justice was not done.

between the defendant and counsel was resolved favorably to the defendant and did not deprive him of a full and fair trial.[23]

*Judgment affirmed.*

---

[23]The defendant informed counsel and the judge prior to trial that, apparently contrary to counsel's advice, he wished to have "nothing to do with psychiatrists. It has nothing to do with the case." After a colloquy with the judge, the defendant eventually conceded that he did not disagree with counsel's strategy. The defendant explained that counsel was "an excellent attorney" and told the judge that a psychiatrist and a psychologist should testify on his behalf. At the charge conference, the defendant's counsel objected to the judge's stated intention to inquire directly of the defendant regarding an instruction on his failure to testify. The judge conducted the inquiry and the defendant stated that he wanted the instruction, and it was given. The defendant's attorney also did not request an instruction on the "castle" law, but the defendant did so himself. See note 11, *supra.*

Commonwealth *v.* Carlino.

APPENDIX.

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT

BRISTOL, SS.                                    Indictments 34626-27

COMMONWEALTH

vs.

THOMAS P. CARLINO

VERDICTS OF THE JURY

We the Jury return the following Verdicts:

1. MURDER (34626)

   \_\_\_ Not Guilty

   \_X\_ Guilty of Murder in the First Degree

      If the defendant is guilty of Murder in the First Degree, please identify the basis for this verdict:

   \_X\_ Murder by deliberately premeditated malice aforethought

   \_X\_ Murder by extreme atrocity or cruelty

   \_\_\_ Murder in the commission or attempted commission of a crime punishable with imprisonment for life

   \_\_\_ Guilty of Murder in the Second Degree

   \_\_\_ Guilty of Voluntary Manslaughter

   \_\_\_ Guilty of Involuntary Manslaughter

2. UNLAWFUL POSSESSION OF A SAWED-OFF SHOTGUN (34727)

   \_\_\_ Not Guilty

   \_X\_ Guilty

April 12, 1995                                    /s/
DATE                                        FOREMAN OF THE JURY