NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11570

COMMONWEALTH  vs.  ENFRID BROWN, JR.
(and a companion case[1]).[2]


Suffolk.     October 9, 2014. - February 11, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Homicide.  Practice, Criminal, Double jeopardy, Capital case, Verdict.  Constitutional Law, Double jeopardy.


Indictments found and returned in the Superior Court on May 16, 1973.

Following review by this court, 367 Mass. 24 (1975) and 378 Mass. 165 (1979), motions for a new trial, filed on September 23, 2009, and July 26, 2012, were considered by Frank M. Gaziano, J.

A request for leave to appeal was allowed by Gants, J., in the Supreme Judicial Court for the county of Suffolk.

_____

[1] Commonwealth vs. William J. Johnson, Jr.

[2] According to the defendants' brief, Enfrid Brown's correct first name is Efrid and William Johnson's current name is Abdullah K. Sabree.  We follow the custom of the court and refer to the defendants by the names used in their indictments.  See Commonwealth v. Anderson, 425 Mass. 685, 685 n.1 (1997).

Ryan M. Schiff, Committee for Public Counsel Services, for William J. Johnson.

Matthew Sears, Assistant District Attorney, for the Commonwealth.

Robert L. Sheketoff, for Enfrid Brown, Jr., was present but did not argue.

HINES, J.  The defendants, Enfrid Brown, Jr., and William J. Johnson, were indicted on charges of murder and armed entry with the intent to commit a felony in connection with the 1973 death of the victim, Hakim A. Jamal.[3]  The defendants were convicted by a jury of murder in the first degree at their first trial.[4]  We reversed the first convictions on grounds not pertinent to this appeal and remanded for a new trial. Commonwealth v. Brown, 367 Mass. 24, 32 (1975) (Brown I).  They were retried and again convicted.  We affirmed the second convictions.  Commonwealth v. Brown, 378 Mass. 165, 166 (1979) (Brown II).

After various proceedings, which we detail below, the defendants filed a third[5] motion for a new trial in July, 2012, arguing that the jury's initial report of not guilty verdicts in

---

[3] The victim also was known as Allen Donaldson.

[4] The defendants were also convicted by a jury of armed entry with the intent to commit a felony at their first trial; they were not retried on the armed entry indictments.

[5] This motion is referred to as the "supplemental" motion by the defendants, but the single justice adopted the reference used by the Commonwealth, and we too shall refer to this as the "third" motion.

the first trial was in fact an acquittal of murder in the first degree on the theory of deliberate premeditation and the retrial on that same theory in the second trial violated their double jeopardy rights. In a thoughtful memorandum of decision, a Superior Court judge denied the motion. The defendants petitioned a single justice of this court, pursuant to the "gatekeeper" provision of G. L. c. 278, § 33E, for leave to appeal. The single justice allowed the appeal to proceed on the question whether the jury's initial verdict has the double jeopardy consequence, under Federal constitutional law and the statutory and common law of Massachusetts, of barring retrial on a theory of premeditated murder. For the reasons explained below, we conclude that the defendants suffered no violation of their double jeopardy rights and affirm the denial of the motion for a new trial.

1. Background. We set forth the facts the jury could have found, as detailed in Brown II:

"On May 1, 1973, Hakim Jamal occupied a third-floor apartment with Hane Jamal, who described herself as Hakim's wife in a "spiritual" but not a legal sense, and with Crab Jamal, Kidogo Jamal, Linda Jacobs, and Linda's son Anthony Jacobs. On the morning of May 1, . . . Kidogo had an argument with one Louella Burns (also known as Sister Cissy).

"Burns informed members of an organization called 'De Mau Mau' of her argument with Kidogo. Included among the members of the organization were the . . . defendants [and

John Clinkscales],[6] as well as [Phillips] Key and [Isaac] Mitchell. These five individuals procured various firearms including handguns, carbines, and a rifle and drove to the Jamal apartment about 11 P.M.[7] Leaving their car locked but with the engine running, all five ascended the stairs carrying the firearms. Key knocked on the door of the Jamal apartment and Kidogo answered. A German shepherd dog left the apartment while the door was open. Kidogo attempted to close the front door, ran into the living room, and blocked the living room door closed with his body. Hakim, Hane, and Crab were also present in the living room. At the same moment, Anthony was in a bedroom at the other end of an interior hallway. Linda was in the kitchen, which was located between the bedroom and the living room.

"Key, Mitchell, [Clinkscales,] and the . . . defendants entered the apartment. Johnson turned down the hall toward the bedroom. He kicked open the bedroom door and pointed a rifle at Anthony. Linda and Anthony, both of whom knew Johnson well, asked him not to hurt Anthony, and Johnson backed away. Key forced open the living room door, pinning Kidogo between the open door and a wall. Hakim attempted to raise a shotgun lying next to the chair in which he was sitting. Key quickly lay down on the floor. Mitchell fired several shots at Hakim, killing him. At some point during these events, Brown and Clinkscales were in the foyer area of the apartment where they were observed, respectively, by Linda and Anthony." (Footnotes omitted.)

Brown II, 378 Mass. at 166-168.

To provide context for the defendant's double jeopardy claim, we describe additional aspects of the defendants' trials and the relevant procedural history.

---

[6] John Clinkscales was tried in 1973 and 1975 together with the defendants appealing here and was convicted of the same charges as the defendants, but he has since died and is not a party to this appeal.

[7] The theory presented by the Commonwealth was that the defendants and other participants went to the apartment to pick up Kidogo Jamal and implement "black justice."

a.  <u>First trial</u>.  After a ten-day trial,[8] the jury reported that they had reached verdicts and the judge summoned them to the court room to announce the verdicts.  In response to the clerk's inquiry, the jury foreman initially announced not guilty verdicts as to each of the murder indictments and guilty verdicts as to the armed entry indictments.  Within minutes, however, the jury reentered the court room and amended the previously announced not guilty verdicts to find the defendants guilty of murder in the first degree.  The jury confirmed its initial guilty verdicts as to the indictments for armed entry of a dwelling with intent to murder.   The circumstances of the change in the jury's verdicts from not guilty to guilty of murder in the first degree, although mired in confusion and ambiguity, form the factual core of the defendants' double jeopardy claim.  This court in Brown I described the events surrounding the verdicts as follows:

> "On the afternoon of the second day of their deliberations, the jury returned verdicts of not guilty on the . . . murder indictments and guilty on the . . . indictments for armed entry.  The verdicts were affirmed by the jury and recorded, and the jury were discharged and allowed to retire.  Four minutes later the jury returned to the court room and were permitted to correct the verdicts.  The foreman said, 'The way the [c]lerk read the charges to us, or the indictments, was not the same as the form that we

---

[8] This murder trial commenced on July 20, 1973, approximately two months after the return of the indictment on May 16, 1973, and nearly three months after the murder on May 1, 1973.

were using in the case. . . .  We had written down 'not guilty' of the intent of entering to murder.[9]  But we did find him guilty of murder in the first degree on the charge of a felonious murder.'  Corrected verdicts of guilty of murder in the first degree and guilty of armed entry were then returned, affirmed and recorded, and the jury were again permitted to retire."

Brown I, 367 Mass. at 27.

We recount additional details of the reporting of the jury's verdicts as gleaned from the record available to us.[10] After instructing the jury on the law, the judge suggested a procedure for recording the verdicts in the jury room.  He provided copies of the indictments and directed the jury foreman to indicate the verdicts on those copies "so that [the foreman

---

[9] The trial judge had asked the jury to write their verdicts on copies of the indictments, and the clerk requested the copies from the foreman of the jury after the verdicts were read, but the foreman indicated to the clerk that he did not want to turn them in.  After reading the corrected verdicts, the foreman handed the clerk the marked copies.  The copies of the murder indictments stated "Guilty" and there were erasure marks where the foreman had erased "Not"; the copies of the armed entry indictments stated "Guilty, First Degree."

[10] The transcript from the first trial is missing even-numbered pages in the portion of the trial that includes the trial judge's instructions to the jury, the jury verdicts, and the foreman's statements made in connection with the corrected verdicts.  In place of the missing pages, both parties cite to our decision after review of the defendants' direct appeal pursuant to G. L. c. 278, § 33E, Commonwealth v. Brown, 367 Mass. 24 (1975) (Brown I), which contains factual information that is missing from the transcript.  To the extent the defendants' claim rests on the missing portions of the transcripts, that claim is waived by the defendants' failure to follow the procedure under Mass. R. A. P. 8 (c), as amended, 378 Mass. 932 (1979), for reconstructing the record.  See Commonwealth v. Hunt, 22 Mass. App. Ct. 932, 933 (1986).

would] not have any confusion in reporting." In his explanation of this process, the judge began first with the armed entry indictments and ended with the murder indictments, adding information about how the foreman was to report the verdicts in the event of guilty findings on that offense. However, in calling for the verdicts, the clerk did not follow the order of the judge's instructions for reporting of the verdicts. Instead, the clerk inquired first regarding the verdict on the murder indictments. The foreman replied, "Not guilty." As the jury left the court room and before they were released, the foreman alerted the court officer, stating, "There is something wrong in the verdict." The court officer advised the foreman to say no more and reported this exchange to the chief court officer. The chief court officer immediately reported the matter to the judge who was still in the court room in the presence of counsel and the defendants. The defendants had not yet been discharged on the indictments.

The judge summoned the jury back to the court room for further inquiries into the matter of the verdicts. When the jury returned to the court room, the foreman announced guilty verdicts on each of the indictments. Apparently by way of explanation, the foreman stated, "We signed these affidavits in the fashion that we voted. The way the [c]lerk read the charges to us, or the indictments, was not the same as the form that we

were using in this case." The foreman continued, "We had written down 'not guilty' of the intent of entering to murder. But we did find him guilty of murder in the first degree on the charge of a felonious murder." Brown I, 367 Mass. at 27.

Additional details of the trial judge's charge to the jury also provide context for the foreman's explanation regarding the changed verdicts. In reaching their verdicts on the murder indictments, the jury were required to parse the instructions on two different felonies: the kidnapping of Kidogo as the predicate felony for felony-murder; and the separate felony of armed entry with the intent to murder Hakim. As to the latter, the jury were instructed that if there was a reasonable doubt "that [the defendants] went [to the apartment] to murder Hakim, these defendants must be found not guilty" on this second indictment.[11] Brown I, supra at 29. The foreman's statement, "We had written down 'not guilty' of the intent of entering to murder," was an apparent reference to this instruction on the armed entry charge.

After the jury were permitted to correct the verdicts, the defendants moved for a mistrial, arguing that the jury had no power to change its verdicts after being discharged. The defendants claimed that the jury were free to mingle and talk

---

[11] The court observed that this instruction may well have been "too favorable" to the defendants. Brown I, supra at 29.

with alternate jurors and that the changed verdicts indicate prejudicial confusion.  The trial judge conducted an evidentiary hearing and denied the defendants' motions, concluding that the jury had the power to correct the verdicts because they were "still within the control of the [c]ourt and in the custody of the court officers" and had not mingled or discussed the case with others prior to correcting their verdict.  Adding his own gloss to what had occurred, the trial judge stated, "It is clear beyond all doubt that it was the decision of the jury that the defendants were guilty of murder in the first degree, such murder having been committed during the commission of a felony punishable by life imprisonment."  The judge made no comment concerning deliberately premeditated murder.

The defendants appealed their convictions, raising a number of issues, including the trial judge's denial of the motions for a mistrial.  We reversed the convictions and remanded for a new trial based on the trial judge's use of an impermissibly coercive version of the charge modeled in Commonwealth v. Tuey, 8 Cush. 1, 2 (1851).  Brown I, 367 Mass. at 32.  We reviewed the circumstances of the corrected verdicts and noted that the "present record shows no impropriety in the correction of the verdicts on the murder indictments."  Id. at 29.  We questioned, however, whether the armed entry convictions could stand in light of the foreman's explanation, "We had written down 'not

guilty' of the intent of entering to murder.  But we did find him guilty of murder in the first degree on the charge of felonious murder."  Because we reversed based on the Tuey charge, we did not review the point further and noted that "[i]t is sufficient for present purposes that the erroneous 'not guilty' verdicts on the murder indictments do not preclude a new trial."  Id.

b.  Second trial.  The defendants were retried only on the murder indictments, and both were convicted of murder in the first degree by a jury on July 31, 1975.  The trial judge had instructed the jury to consider both "deliberately premeditated" murder and "felony murder" as theories supporting the indictments.  The jury returned general verdicts of guilty of murder in the first degree without specifying the theory of culpability, as was the practice at the time.[12]  See Commonwealth

---

[12] At the time of the defendants' trials, the jury were allowed to return a guilty verdict on a murder indictment even if fewer than twelve jurors agreed on a particular theory of murder.  Commonwealth v. Berry, 420 Mass. 95, 111 (1995), citing Commonwealth v. Devlin, 335 Mass. 555, 567-568 (1957).  In 1995, this court recognized that the right to a unanimous jury should extend to the theory of culpability where the offense charged contains more than one theory.  Berry, supra at 112 & n.17.  Accordingly, juries in murder trials now must unanimously agree on the theory underlying a guilty verdict and mark such determinations on a special verdict slip.  See Commonwealth v. Carlino, 449 Mass. 71, 77-78 (2007); Berry, supra at 112.  This rule, however, applied only prospectively, and at the time of the defendants' trials, there was no expectation that the jury should unanimously agree on theories underlying a verdict.  Berry, supra at 111-112.

v. <u>Devlin</u>, 335 Mass. 555, 567-568 (1957), <u>S</u>.<u>C</u>., 361 Mass. 287 (1972) and 363 Mass. 171 (1973).

c. <u>Posttrial motions</u>.  After the second trial, the defendants filed a first motion for a new trial on the grounds of newly discovered evidence and in the interest of justice, based on information obtained during the trial of Phillips Key and Isaac Mitchell for the same murder.  We affirmed the convictions following the second trial and the denial of the first motion for a new trial.  <u>Brown II</u>, 378 Mass. at 166.

In September, 2009, the defendants filed a second motion for a new trial, asserting, among other claims, that their second trial violated their double jeopardy rights because a jury had acquitted them of murder in the first degree in their first trial.[13]  The judge denied this motion, and the defendants petitioned a single justice of this court, pursuant to the gatekeeper provision of G. L. c. 278, § 33E, for leave to appeal the denial.  The Commonwealth assented to the defendants' request to stay the gatekeeper proceedings pending the defendants' filing of their third motion for new trial.  In the

---

[13] The defendants' second motion for a new trial made essentially the same argument asserted in their petition for habeas corpus relief.  The judge dismissed the petition, concluding that "the erroneous verdict of not guilty in the first trial was not a final determination of the proceedings against the petitioners and . . . , therefore, their second trial did not violate their right not to be twice placed in jeopardy."  <u>Brown</u> v. <u>Gunter</u>, 428 F. Supp. 889, 891 (D. Mass.), aff'd, 562 F.2d 122 (1st Cir. 1977).

third new trial motion, the defendants revised their double jeopardy argument and for the first time argued that the jury had actually acquitted them of murder in the first degree on a theory of deliberate premeditation in their first trial and, therefore, double jeopardy protections precluded retrial on that same theory. The same judge who had denied the second motion for a new trial (motion judge) also rejected this claim, ruling that the defendants were not acquitted of murder in the first degree murder on a theory of deliberate premeditation and, therefore, the Commonwealth was not barred from retrying the defendants on that theory.

The defendants then petitioned the single justice for leave to appeal from this ruling. The single justice allowed the defendants' petition to appeal the double jeopardy claim made in their third motion for a new trial.[14]

2. Discussion. a. Standard of review. In reviewing the denial or grant of a new trial motion, we examine the motion

---

[14] The single justice determined that the defendants' claim was "new" in that they had not previously focused their double jeopardy argument on the deliberate premeditation theory, reasoning that "this variant of the defendants' double jeopardy argument was not raised at trial or on direct review, was not argued or addressed on appeal, and reasonably could not have been addressed because the applicable law was not sufficiently developed at the time of the direct appeal." Accordingly, review is limited to whether the defendants were acquitted at the first trial of murder in the first degree on a theory of deliberate premeditation. We do not address the Commonwealth's waiver argument because we affirm the denial of the defendants' third motion for a new trial on other grounds.

judge's conclusion only to determine whether there has been an abuse of discretion or significant error of law. Commonwealth v. Wright, 469 Mass. 447, 461 (2014). If the motion judge did not preside at the trial, as is the case here, "we . . . 'regard ourselves in as good a position as the motion judge to assess the trial record.'" Id., quoting Commonwealth v. Weichell, 446 Mass. 785, 799 (2006).

b. Analysis. "[T]he [d]ouble [j]eopardy [c]lause precludes the [g]overnment from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." Yeager v. United States, 557 U.S. 110, 119 (2009), citing Ashe v. Swenson, 397 U.S. 436 (1970). "[T]he prohibition against double jeopardy, which flows from the Fifth Amendment to the United States Constitution, as well as the statutory and common law of Massachusetts, provides that 'a person cannot twice be put in jeopardy for the same offence.'" Marshall v. Commonwealth, 463 Mass. 529, 534 (2012), quoting Commonwealth v. Burke, 342 Mass. 144, 145 (1961). See G. L. c. 263, § 7.[15] The double jeopardy principle "protects against three specific evils -- 'a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and

---

[15] General Laws c. 263, § 7, provides in relevant part: "A person shall not be held to answer on a second indictment or complaint for a crime of which he has been acquitted upon the facts and merits . . . ."

multiple punishments for the same offense.'" Marshall, supra, quoting Mahoney v. Commonwealth, 415 Mass. 278, 283 (1993). The defendants' double jeopardy claim derives from the prohibition of a second trial after an acquittal.

The defendants' double jeopardy claim depends not on what the jury explicitly stated in the report of the verdict but on the defendants' interpretation of what the jury must have intended. They argue that despite the confusion surrounding the announcement of the verdicts in the first trial, the trial judge correctly interpreted the jury foreman's statement that the jury reached guilty verdicts "on the charge of a felonious murder" when he inferred that the jury intended to acquit the defendants of deliberately premeditated murder. Consequently, they claim that the motion judge erred in concluding that the jury did not specifically reject the theory of deliberate premeditation and that the jury's pronouncement, therefore, was not an acquittal barring a retrial. We disagree. No acquittal occurred where the jury's pronouncement of its verdicts did not unequivocally reject the defendant's guilt on the theory of deliberate premeditation.

An "acquittal requires a verdict on 'the facts and merits.'" Commonwealth v. Gonzalez, 437 Mass. 276, 282 (2002), cert. denied, 538 U.S. 962 (2003), quoting G. L. c. 263, § 7. This disposition properly may be claimed only when the fact

finder reaches "a resolution, correct or not, of some or all of the factual elements of the offense charged." Commonwealth v. Babb, 389 Mass. 275, 281 (1983), quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977). Thus, where a verdict does not specifically resolve all the elements of the offense charged, it is defective and cannot operate as either an acquittal or a conviction. Commonwealth v. Call, 21 Pick. 509, 514-515 (1839).

The defendants do not claim that the jury unequivocally found that the Commonwealth failed to meet its burden of proof on the theory of deliberate premeditation. Rather, the defendants urge us to conclude that the jury intended to acquit them of murder on a theory of deliberate premeditation. This alleged intent is to be deduced from an interpretation of postverdict statements of the trial judge and jury foreman immediately before correcting the verdicts. We are invited to interpret the meaning of the foreman's statements and defer to statements made by the trial judge. We decline to do so.

The foreman's statements were not sufficiently clear and unequivocal to show that the jury actually reached a resolution of the "factual elements" of deliberate premeditation. Babb, 389 Mass. at 281. The foreman's statement, "We had written down 'not guilty' of the intent of entering to murder. But we did find him guilty of murder in the first degree on the charge of a

felonious murder." Brown I, 367 Mass. at 27, is silent as to the jury's verdict on the theory of deliberate premeditation. Because an acquittal may not be based on such silence, we accord no legal significance to the jury not expressly declaring their intent on deliberately premeditated murder. See Commonwealth v. Carlino, 449 Mass. 71, 80 (2007) (absence of indication of any decision on third theory of culpability not acquittal on that theory even though jury indicated culpability on first two theories). Thus, we may not definitively conclude that the jury intended to acquit the defendants of deliberately premeditated murder.

Because of the ambiguity in the foreman's statements, we do not and cannot know what the jury intended even if it were possible, in the absence of a clear expression, to effectuate that intent. See Carlino, 449 Mass. at 78 n.18 ("The jury might have intended an acquittal . . . ; they might have been unable to reach a unanimous verdict; or they might not have deliberated on that theory at all"). "[T]he interests of justice are not served by entry of an acquittal by accident or supposition." Id. at 80.

The trial judge's instructions to the jury also support the inference that the jury did not intend to acquit the defendants of murder on a theory of deliberate premeditation. As instructed by the judge, the only charge that required an

"intent of entering to murder" was armed entry with the intent
to commit a felony. The jury could find the defendants guilty
of murder on a theory of deliberate premeditation even if the
defendants did not have the intent to murder upon entry but
developed that intent while inside the apartment. Accordingly,
the foreman's explanation that the jury intended to vote not
guilty of "the intent of entering to murder" is consistent with
this court's interpretation in Brown I that the jury may have
intended to acquit the defendants of the armed entry charges
only.[16] Brown I, 367 Mass. at 29 ("there is a serious question
whether any of the verdicts on the armed entry indictments can
stand").

Although the defendants suggest that we adopt the trial
judge's explanation of the jury's intention, this suggestion
also is unavailing. Based on the record, the trial judge could
not reasonably have concluded that the jury unequivocally and
unanimously intended to return a guilty verdict only on the
theory of felony-murder without impermissible speculation into

---

[16] The foreman's markings on the verdict slips further
support this theory. After being instructed that the possible
verdicts for armed entry were not guilty or guilty and the
possible verdicts for murder were not guilty, guilty of first
degree murder, or guilty of second degree murder, the foreman
had marked, "Guilty, First Degree," on the armed entry
indictments and marked, "Not Guilty" -- later erasing the "Not"
-- on the murder indictments.

jury deliberations.[17]  See <u>Yeager</u>, 557 U.S. at 122; <u>Carlino</u>, 449 Mass. at 80.  The foreman did not testify at the posttrial hearing on the motions for mistrial, nor did any other jurors.[18] In these circumstances, where the trial judge's explanation contradicts the foreman's statements, we accord it no deference. We do not and cannot know what the jury intended.  "The jury might have intended an acquittal . . . ; they might have been unable to reach a unanimous verdict; or they might not have deliberated on that theory at all."  See <u>Carlino</u>, <u>supra</u> at 78 n.18.

3.  <u>Conclusion</u>.  Because the first trial produced no "verdict on 'the facts and merits'" of the charge of murder in the first degree on a theory of deliberate premeditation, the motion judge did not err in concluding that there was no acquittal and therefore no error in prosecuting the defendants on that same theory in the second trial.  <u>Gonzalez</u>, 437 Mass. at 282, quoting G. L. c. 263, § 7.

<u>Order denying motion for a</u>

---

[17] The defendants also ask us to adopt the prosecutor's statement at the posttrial hearing regarding the jury's intent, which is similarly only speculation and not binding on our analysis.

[18] The issue before the trial judge was whether the jury had the power to correct their verdict in light of the assertion that they were free to mingle with alternate jurors and other persons before making such correction.  The issue of what the jury intended when they changed their verdict was not in dispute.

new trial affirmed.